UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN SHIRK, *et al.*, | : | Case No. 05-cv-49 |
| | : | |
| Plaintiffs, | : | Black, M.J. |
| | : | |
| vs. | : | |
| | : | |
| FIFTH THIRD BANCORP, *et al.*, | : | |
| | : | **MEMORANDUM OPINION** |
| Defendants. | : | **AND ORDER** |

This case is before the Court on Defendants' amended motions to dismiss
Plaintiffs' first amended class action complaint for failure to state a claim upon which
relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to adequately
plead violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.
§ 1001 *et seq.*, pursuant to Fed. R. Civ. P. 9(b). (Docs. 62, 65.) Defendants also request,
in the alternative, a more definite statement pursuant to Fed. R. Civ. P. 12(e). (*See* Doc.
65.) For the following reasons, the motions to dismiss are **DENIED**, except, as
explained *infra*, as to any claim by Plaintiffs for monetary damages against a
nonfiduciary.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Benjamin Shirk, a former employee of defendant Fifth Third Bancorp and
alleged participant in the Fifth Third Bancorp Master Profit Sharing Plan ("the Plan"),
initiated this action by filing a class action complaint on January 26, 2005, alleging, *inter
alia*, improprieties in the management and administration of the Plan. (*See* Doc. 1.) On

October 14, 2005, Shirk was granted leave to file an amended complaint.  (Doc. 52.)

Joined by Ronald Jauss, another alleged Plan participant, Shirk filed an amended class

action complaint on October 17, 2005.  (Doc. 53.)

On January 24, 2006, Defendants Fifth Third Bancorp, Fifth Third Bank, George

A. Schaefer, Jr., Paul L. Reynolds, James F. Girton, Joyce Tillman, and the members of

the Fifth Third Pension and Profit Sharing Committee[1] (collectively "the Fifth Third

Defendants") filed a motion to dismiss Plaintiffs' first amended class action complaint for

failure to state a claim upon which relief can be granted and for failure to adequately

plead violations of ERISA.  (Doc. 62.)  On the same day, a second group of Defendants

comprised of the Fifth Third Board of Directors (hereinafter "the Outside Directors"),[2]

separately filed a motion to dismiss or, in the alternative, motion for a definite statement.

(Doc. 65.)  Plaintiffs filed a memorandum in opposition to the motions on February 28,

2006.  (Doc. 73.)  The two defendant groups separately filed memoranda in reply.  (Docs.

74, 75.)  Both sides have filed supplemental authority.  (Docs. 79, 80, 84.)

---

[1]        Named defendants include the following members of the Fifth Third Pension and Profit Sharing Committee ("the Committee"):  Paul L. Reynolds, Neal E. Arnold, Michael D. Baker, Michael K. Keating, Robert P. Niehaus, Stephen J. Schrantz, Greg D. Carmichael, Kevin Kabat, Pete Pesce, and  Robert Sullivan.  (*See* Doc. 53 at ¶¶ 20-30.)

[2]        The Fifth Third Board of Directors (or "the Outside Directors") include the following: John Barrett, Richard Farmer, Robert Morgan; Donald B. Shackelford, Dudley S. Taft, David J. Wagner, Darryl F. Allen, Joseph H. Head, Jr., Allen M. Hill, Mitchell D. Livingston, Hendrik G. Meijer, James E. Rogers, Thomas B. Donell, James P. Hackett, Joan R. Herschede, Robert L. Koch II, and Thomas W. Traylor.  (*See* Doc. 53 at ¶ 19.)  Defendants also name John Schiff, Jr. as an "Outside Director."  (*See* Doc. 65 at p. 1.)

A.    **The Parties**

Plaintiffs state that they are former Fifth Third employees and current participants

in the Plan.  (Doc. 53 at ¶¶ 12-13.)  During the alleged Class Period, September 21, 2001

to the present (*see id.* at ¶ 3), as a result of their own and/or the Company's contributions,

Plaintiffs acquired and held shares of Fifth Third stock in their respective Plan accounts.

(*Id.*)

Defendant Fifth Third Bancorp (collectively, with its subsidiaries and affiliates,

"Fifth Third") is an Ohio corporation with its principal executive office in Cincinnati,

Ohio.  (*Id.* at ¶ 14.)  Fifth Third is a bank holding company subject to regulation by the

Board of Governors of the Federal Reserve System.  (*Id.*)  Fifth Third has a second-tier

holding company, Fifth Third Financial Corporation, which has six wholly-owned direct

subsidiaries: Fifth Third Bank; Fifth Third Bank (Michigan); Fifth Third Community

Development Corporation; Fifth Third Investment Company; Old Kent Capital Trust I;

and Fifth Third Reinsurance Company, Ltd.  (*Id.*)

Throughout the alleged Class Period, Fifth Third's responsibilities included,

through its Board of Directors and its Chief Executive Officer, broad oversight of and

ultimate decision-making authority respecting the management and administration of the

Plan and the Plan's assets, as well as the appointment, removal, and monitoring of other

fiduciaries of the Plan that Fifth Third appointed, or to whom it assigned fiduciary

responsibility, including the Fifth Third Pension and Profit Sharing Committee and the

Fifth Third Investment Advisors.  (*Id.* at ¶ 15.)  Fifth Third exercises discretionary

authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets. (*Id.*)

Defendant Fifth Third Bank serves as the trustee of the Plan and also exercises discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets. (*Id.* at ¶ 16.)

Defendant George A. Schaefer, Jr. ("Schaefer") is the Company's Chief Executive Officer, a member of the Board of Directors, and an alleged fiduciary of the Plan. (*See id.* at ¶ 17.)

The Board of Directors (or "Outside Directors") are identified as fiduciaries because they allegedly exercise decision-making authority regarding the appointment of Plan fiduciaries and the management of the Plan's assets. (*Id.* at ¶ 18; *see also id.* at ¶¶ 19(a)-(q).)

Defendant Paul L. Reynolds is a member of the Pension and Profit Sharing Committee and signed the financial reports for the Plan. (*See id.* at ¶ 21.)

Defendant James F. Girton signed the Form 5500s for Fiscal Year 2002 for the Plan as the "individual signing as Plan administrator" and also exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets. (*Id.* at ¶ 31.)

Defendant Joyce Tillman signed the Form 5500s for Fiscal Year 2001 for the Plan as the "individual signing as Plan administrator" and also exercised discretionary authority with respect to management and administration of the Plan and/or management

-4-

and disposition of the Plan's assets. (*Id.* at ¶ 32.)

Defendant Fifth Third Investment Advisors[3] manage the assets of the Plan. (*Id.* at ¶ 33.)

**B.     The Plan**

According to Plaintiffs, the Plan is a defined contribution profit sharing plan, subject to the provisions of ERISA, with a 401(k) feature and with separate accounts maintained for each participant. (*Id.* at ¶ 35.) The Plan has two components: (1) a component in which Plan participants make voluntary, pre-tax contributions to the Plan out of their base pay, and (2) a component in which the Company matches a portion of the participant's contributions to the Plan. (*Id.* at ¶ 2; *see also* ¶¶ 40, 41.) Participants are fully vested in both voluntary and matching contributions. (*Id.* at ¶¶ 40, 42.)

The Plan's 401(k) feature offers a variety of investment alternatives of which one, the Fifth Third Stock Fund, contains shares of Fifth Third Bancorp common stock and short-term liquid investments. (*Id.* at ¶ 44.) Effective December 31, 2001, a participant with an account invested in the Fifth Third Stock Fund has a right to elect to have dividends from the fund reinvested in Fifth Third Bancorp common stock or to take the dividends in cash. (*Id.* at ¶ 48.)

---

[3]     The "Investment Advisors" are identified simply as "a fiduciary of the Plan because it exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets." (*See* Doc. 53 at ¶ 33.) Individual advisors are not identified. Defendants state that "'Fifth Third Investment Advisors' is not a separate, legal entity, but rather is solely a division of Fifth Third Bank and is therefore not a properly named Defendant." (Doc. 62 at p. 13, n.3.)

**C.      Factual Allegations**

Plaintiffs' claims are based, in part, on the following allegations of fact:

On April 2, 2001, the Company acquired Old Kent Financial Corp. ("Old Kent") in a stock-for-stock transaction valued at $5.5 billion.  (*Id.* at ¶ 66.)  The integration of Old Kent's operations with Fifth Third's was allegedly "a Herculean undertaking" for which Fifth Third was unprepared, and for which Fifth Third lacked the experience or managerial competence to accomplish successfully.  (*Id.*)  Fifth Third issued press releases and filed financial reports with the SEC, which represented that it had successfully and seamlessly integrated Old Kent into its operations, and was already experiencing meaningful growth from the acquisition.  (*Id.* at ¶ 68.)  Plaintiffs allege that defendants concealed the difficulties encountered in integrating Old Kent into Fifth Third, and the lack of adequate financial controls at Fifth Third necessary to properly manage the Company and account for Fifth Third's assets and liabilities, and thereby artificially inflated the Company's publicly traded stock.  (*Id.* at ¶ 69.)  Defendants allegedly concealed from investors the fact that it had outgrown its infrastructure and internal financial and operating controls and that the breakdown of financial controls was producing false, misleading, and unreliable financial statements.  (*Id.* at ¶ 70.)

On September 10, 2002, the Company announced – in a Form 8-K filed with the SEC – that it would be taking a $54 million after-tax ($81.8 million pre-tax) charge for impaired funds, allegedly a one-time, immaterial event resulting from an accounting reconciliation.  (*Id.* at ¶ 71.)  On November 14, 2002, the Company revealed that federal

-6-

banking regulators and the SEC were investigating whether the Company's rapid growth had outpaced its internal controls and processes. (*See id.* at ¶ 72.) Plaintiffs allege that the news of the investigation caused the price of Fifth Third common stock to drop, falling from a November 14, 2002 close of $62.53 to close at $57.42 the next day, a one-day decline of 8.1%, on extremely heavy trading volume. (*Id.*)

Plaintiffs allege that the Company issued further misrepresentations about the financial impact of the regulatory investigation. (*See id.* at ¶ 73.) "In a Form 8-K filed on December 10, 2002, the Company represented that . . . its internal controls were adequate, and that there would be no additional negative financial impact from the $81 million incident." (*Id.*)

On January 31, 2003, however, the Company issued a Form 8-K stating that banking regulators would likely take formal action against it. (*Id.* at ¶ 74.) Plaintiffs allege that as a result of this later report, the price of Fifth Third common stock closed at $52.21 per share on February 3, 2003 (the next trading day), a further decline of 15% from the closing price on November 14, 2002. (*Id.*)

In further support of their claims that Defendants mishandled the internal operations of the Company, Plaintiffs allege that on March 26, 2003, Fifth Third entered into an agreement with regulatory agencies to dramatically reconstruct its entire system of internal controls. (*See id.* at ¶ 75, 76.) Plaintiffs state that at no time prior to the disclosure of the agreement were investors informed of the depth or severity of Fifth Third's lack of internal financial controls or the risk to investors flowing from those

absent controls entering the agreement. (*Id.* at ¶ 77.)

According to plaintiffs, Fifth Third suffered a chronic, systemic, and internally obvious breakdown of internal accounting controls due to a failure to implement and maintain adequate control systems, or a knowing and reckless toleration of the failure to use existing controls. (*See id.* at ¶ 81.)

In support of its claims that Fifth Third knew or should have known that Fifth Third stock was not a prudent investment for the Plan, Plaintiffs allege, in part, that Defendants knew of the false and misleading statements (*id.* at ¶ 83), failed to provide Plan participants with information regarding Fifth Third's improper activities (*id.* at ¶ 88), and failed to protect participants against unnecessary losses (*id.* at ¶¶ 89, 90). Plaintiffs allege, moreover, that Defendants' regular communications with Plan participants fostered a positive attitude toward Fifth Third stock and did not disclose negative material information concerning investment in Fifth Third stock. (*See id.* at ¶¶ 91, 92.)

**D.  The Claims**

Plaintiffs present six bases for recovery for breach of fiduciary duties in violation of ERISA §§ 404, 405, and 502(a)(3): (1) a failure by all Defendants to prudently and loyally manage the Plan's assets (Count I); a failure by all Defendants to provide complete and accurate information to participants and beneficiaries (Count II); (3) a failure by Fifth Third, Schaefer, and the Outside Directors to monitor the Pension and Profit Sharing Committee, the Investment Advisors and other fiduciaries of the Plan and to provide them with accurate information (Count III); (4) a breach by all Defendants of

-8-

the duty to avoid conflicts of interest (Count IV); (5) co-fiduciary liability for breaches of fiduciary duties by Fifth Third, the Outside Directors and Schaefer (Count V); and (6) knowing participation by Fifth Third in a breach of fiduciary duty (Count VI).

Specifically, Plaintiffs allege that Defendants breached their fiduciary duties by failing to prudently and loyally manage the Plan's investment in Fifth Third Stock by continuing to offer Fifth Third stock as an investment option, to match in Fifth Third Stock, and to hold virtually all assets of the Fifth Third Bank Common Stock Fund in Fifth Third Stock (instead of suitable short-term options within the Fund), when the stock allegedly was no longer a prudent investment for participants' retirement savings. (Doc. 53 at ¶ 50.) Plaintiffs allege that Defendants failed to provide participants with complete and accurate information regarding Fifth Third Stock sufficient to advise participants of the true risks of investing their retirement savings in Fifth Third Stock. (*Id.*) Plaintiffs allege that Defendants failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate, and that Defendants breached their duties and responsibilities to avoid conflicts of interest and to serve the interests of the participants in and beneficiaries of the Plan with undivided loyalty. (*Id.*)

## II.  LEGAL STANDARDS

### A.  Motions to Dismiss

On consideration of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all of the

factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996); *see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint, however, must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. *In re DeLorean Motor Co.*, 991 F.2d at 1240; *see also Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).

In considering a defendant's motion to dismiss, it is proper for the Court to take into account any relevant plan documents. *In re Cardinal Health, Inc. ERISA Litig*., 424 F. Supp. 2d 1002, 1015 (S.D. Ohio 2006). Courts may consider ERISA plan documents not attached to a complaint where a plaintiff's claims are "based on rights under the plans which are controlled by the plans' provisions as described in the plan documents" and where the documents are "incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims." *Id.* (citing *Weiner*, 108 F.3d at 89). Thus, "materials central to the claims asserted, including exhibits to the defendant's moving papers, may be considered when ruling on a motion to dismiss without converting it to a summary judgment motion. *See Weiner*, 108 F.3d at 89; *Butler v. Aetna U.S.*

-10-

*Healthcare, Inc.*, 109 F. Supp. 2d 856, 859-860 (S.D. Ohio 1999); *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the Plaintiffs' complaint and are central to her claim").

**B. ERISA**

A fiduciary's duties under ERISA are set forth in § 404(a)(1)(A) and (B). *See* 29 U.S.C. § 1104(a)(1)(A), (B). The statute provides, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
>
> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> > (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

*Id.*

As explained by the Sixth Circuit, a fiduciary's duty under ERISA has three components: (1) a duty of loyalty; (2) a duty to act as a prudent person would act in a similar situation; and (3) a duty to act for the exclusive purpose of providing benefits to plan beneficiaries. *See Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (citing *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1162 (6th Cir. 1988)) (internal quotations and citations omitted).

Generally, an individual's liability as a fiduciary is limited to the extent he has

authority to act:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises
> any discretionary authority or discretionary control respecting management
> of such plan or exercises any authority or control respecting management or
> disposition of its assets, (ii) he renders investment advice for a fee or other
> compensation, direct or indirect, with respect to any moneys or other
> property of such plan, or has any authority or responsibility to do so, or (iii)
> he has any discretionary authority or discretionary responsibility in the
> administration of such plan. Such term includes any person designated
> under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). *See Kuper v. Quantum Chem. Corp.*, 838 F. Supp. 342, 348

(S.D. Ohio 1993) (citing *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984)).

Section 405 of ERISA, however, provides a basis for claims of co-fiduciary

liability for breaches of fiduciary duties:

> In addition to any liability which he may have under any other provisions of
> this part, a fiduciary with respect to a plan shall be liable for a breach of
> fiduciary responsibility of another fiduciary with respect to the same plan in
> the following circumstances:
>
> > (1) if he participates knowingly in, or knowingly undertakes to
> > conceal, an act or omission of such other fiduciary, knowing such act or
> > omission is a breach;
>
> > (2) if, by his failure to comply with section 1104(a)(1) of this title in
> > the administration of his specific responsibilities which give rise to his
> > status as a fiduciary, he has enabled such other fiduciary to commit a
> > breach; or
>
> > (3) if he has knowledge of a breach by such other fiduciary, unless
> > he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). *See In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at

-12-

1050-51.

To state a claim for a breach of fiduciary duty under ERISA, a plaintiff must allege that: (1) the defendant was a fiduciary of an ERISA plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty. *See* 29 U.S.C. § 1109;  *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at 1016 (citing *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 CIV. 8853 (SWK), 2005 WL 563166, at *2 (S.D.N.Y. Mar. 10, 2005)).

Under § 502(a)(3), a civil action may be brought

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3); *Helfrich v. PNC Bank, Kentucky, Inc.*, 267 F.3d 477, 481 (6th Cir. 2001), *cert. denied*, 535 U.S. 928 (2002).  ERISA restricts plan participants  to equitable relief with no recourse to money damages on behalf of themselves as individuals.  *See* 28 U.S.C. § 1132(a)(3); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at 1025-26.  Plan participants may seek money damages on behalf of the plan where the recovery goes to the plan itself.  *See In re The Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d 783, 795-6 (N.D. Ohio 2006).  Such an action is deemed to have been brought on behalf of the Plan pursuant to § 502(a)(2).  *Id.*

-13-

### C.  Pleading Standards under Rules 8, Rule 9, and 12(e)

Rule 8 of the Federal Rules of Civil Procedure provides in part that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

Rule 9 of the Federal Rules of Civil Procedure provides a heightened standard of pleading to averment of fraud or mistake and requires that "the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Courts have found that the heightened pleading standard of Rule 9(b) generally does not apply to claims based on a breach of fiduciary duty under ERISA.  *See In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at 1016 ("Claims brought under ERISA are subject only to the simplified pleading standard of Federal Rule of Civil Procedure 8.") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  While some courts which have applied Rule 9 where the alleged breach of fiduciary duty is itself based on averments of fraud, they also separate claims "sounding in fraud" from claims of a breach of fiduciary duty.  *See, e.g., In re General Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444, at *14-15 (E.D. Mich. Apr. 6, 2006) (and cases cited therein).  Even where claims "sounding in fraud" may fail in light of Rule 9, the breach of fiduciary duty claims may go forward if they satisfy Rule 8.  *See id.*

Rule 12 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

If a pleading to which a responsive pleading is permitted is so vague or

ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e).

Motions for a more definite statement "generally are disfavored because of their dilatory effect." *In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 844 (S.D.N.Y. 2001). A motion under Rule 12(e) should not be granted unless the complaint is "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Kok v. First Unum Life Ins. Co.*, 154 F. Supp. 2d 777, 781-82 (S.D.N.Y.2001). If the complaint meets the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, the motion should be denied. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994).

## III. ANALYSIS

The Fifth Third Defendants seek dismissal of the amended class action complaint on the following grounds: (1) Plaintiffs fail to state a claim that the Fifth Third Defendants breached their fiduciary duties by investing in Fifth Third stock; (2) Plaintiffs' claims should be dismissed as a matter of law to the extent they are based on allegations of material misrepresentations or omissions; (3) the amended class action complaint should be dismissed as a matter of law to the extent it asserts claims on behalf of, and seeks damages allegedly suffered by, the Plan after January 31, 2003; (4)

-15-

Plaintiffs fail to meet the basic pleading standard for claiming that Defendants Fifth Third and Schaefer breached their duties to monitor; (5) Defendants Fifth Third and Schaefer did not suffer from an actionable conflict of interest; (6) Plaintiffs fail to state a claim for co-fiduciary liability; (7) Plaintiffs' allegations of Fifth Third's purported knowing participation in breaches of fiduciary duties are wholly conclusory and improperly seek monetary damages under ERISA § 502(a)(3); and (8) Counts III through VI of the amended class action complaint are not supported by an underlying breach of fiduciary duty and must be dismissed as a matter of law.  (Doc. 62.)  The Fifth Third Defendants ask, in the alternative for dismissal of claims based on alleged misrepresentations or omissions after January 1, 2004.  (*See id.* at 3.).

The Outside Directors seek dismissal on the following grounds: (1) Plaintiffs fail to state a claim that the Outside Directors breached their duty of prudence by investing in Fifth Third Stock; (2) Plaintiffs fail to state a claim that Outside Directors are guilty of any fraudulent misrepresentations; (3) Plaintiffs' claims fail to satisfy the pleading requirements of Fed. R. Civ. P. 8; (4) Plaintiffs fail to state a valid claim of conflict of interest; and (5) because Counts III through V are dependent on the existence of an underlying breach of fiduciary duty that has not been proven, they must be dismissed. (Doc. 65.)

**A.  Whether Plaintiffs fail to state a claim that Defendants breached their fiduciary duties by investing in Fifth Third stock**.

Defendants (the Fifth Third Defendants and the Outside Directors) present three-

part arguments in support of their assertions that Plaintiffs fail to state a claim for a breach of the duty to prudently and loyally manage Plan assets by investing in Fifth Third Stock.

First, they state that the Plan is an Employee Stock Option Plan ("ESOP") and that, because it is an ESOP, fiduciaries of the Plan are exempt from ERISA's diversification requirements and entitled to a presumption of reasonableness for their continued offering of and investment in Fifth Third stock. *See, e.g., Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995); *Moench v. Robertson*, 62 F.3d 553, 568 (3d Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Second, they state that Plaintiffs have not alleged any facts rebutting the presumption that the fiduciaries reasonably maintained Fifth Third Stock in the Fifth Third Stock Fund. Third, Defendants state that Plaintiffs fail to state a claim upon which relief can be granted to the extent the claim is brought on behalf of the Plan by participants or beneficiaries whose accounts included investments in Fifth Third Stock from January 1, 2004 to the present.

*1. Whether the Plan is an ESOP*

"An ESOP is a type of ERISA plan that invests primarily in the stock of the employer creating the plan." *Benefits Comm. of Saint-Gobain Corp. v. Key Trust Co. of Ohio, N.A.*, 313 F.3d 919, 924 (6th Cir. 2003) (quoting *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994)); *see also* 29 U.S.C. § 1107(d)(6). Because ERISA requires that an ESOP invest "primarily in qualifying employer securities," 29 U.S.C. § 1107(d)(6)(A), Defendants argue that a decision to invest in Fifth Third stock – and not

-17-

to diversify – would not result in fiduciary liability.

Plaintiffs maintain that the Plan is not an ESOP and that Defendants are not exempt from fiduciary liability based on their assertion that the Plan is an ESOP. Plaintiffs also maintain that it is inappropriate on a motion to dismiss to make a factual finding as to whether the Plan qualifies as an ESOP. On this latter point the Court agrees.

Where the plaintiffs are alleging a breach of fiduciary duty based not only on a failure to diversify but also because a company's stock was itself an imprudent investment, "it is neither necessary nor appropriate" for the Court to determine whether a plan qualifies as an ESOP on a motion to dismiss. *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at 1032-33 (citing *In re AEP ERISA Litigation*, 327 F.Supp.2d 812, 828 (S.D. Ohio 2004)).

Here, Plaintiffs allege, in pertinent part, that Defendants knew or should have known "that the Fifth third Stock was not a suitable or appropriate investment for the Plan," "did not serve the Plan's purposes," and "caused significant losses/depreciation to participants' savings." (Doc. 53 at ¶ 109.)

Thus, to the extent. Plaintiffs allege a breach of fiduciary duty based not only on a failure to diversify but also because the company's stock was itself an imprudent investment, the Court declines to determine at this time whether the Plan was an ESOP as defined by ERISA.

*2. Whether Plaintiffs have alleged sufficient facts to rebut a presumption of reasonableness.*

Defendants next argue that, if it were determined that the Plan is an ESOP, they would be exempt from a duty to diversify; they would be entitled to a presumption of reasonableness, *see Kuper*, 66 F.3d at 1458-59 (citing *Moench*, 62 F.3d at 571)); and that Plaintiffs have failed to allege sufficient facts to rebut the presumption.

Plaintiffs may rebut the so-called *Moench* presumption by alleging sufficient facts to establish that the fiduciary abused its discretion by investing in employer securities when the fiduciary "could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the . . . expectations of how a prudent trustee would operate." *See Moench*, 62 F.3d at 571; *see also Kuper*, 66 F.3d at 1459 ("A plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision."). "The mere fact that fiduciaries are exempted from the duty to diversify holdings of stock does not mean that it is prudent to hold a particular stock, whether the plan holds that stock predominantly or not." Craig C. Martin, Matthew J. Renaud & Omar R. Akbar, *What's Up On Stock-Drops? Moench Revisited,* 39 J. Marshall L. Rev. 605, 620-21 (2006) (citing *In re JDS Uniphase Corp. ERISA Litig.*, No. C 03-04743, 2005 WL 1662131, at *7 (N.D. Cal. July 14, 2005)).

Plaintiffs have alleged sufficient facts to rebut a presumption of reasonableness. In particular, Plaintiffs allege that Defendants knew or should have known that Fifth Third

was engaged in numerous practices (more fully described in Doc. 53, ¶¶ 64-83) that put Fifth Third stock at risk, that they failed to take into account whether the stock was inflated in value, that they created or maintained public misconceptions concerning the true financial health of the Company, and despite the availability of other investment options, continued to invest and allow investment of the Plan's assets in Fifth Third stock even as Fifth Third's questionable practices came to public light.  (*See id.* at ¶¶ 84-91.)

Plaintiffs' allegation that any investment in Fifth Third stock was imprudent in light of what Defendants knew about Fifth Third's lack of meaningful internal controls and the risk of investing in Fifth Third stock is distinguished from a simple allegation Defendants breached a duty to diversify (from which they may or may not be exempt) and is sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See In re JDS Uniphase Corp. ERISA Litig.*, 2005 WL 1662131, at *7.

*3.  Whether Plaintiffs fail to state a claim for a breach of the duty of prudence and loyalty for acts or omissions occurring after January 31, 2004.*

Defendants ask in the alternative, if this Court finds the motion to dismiss is not well taken in whole or in part, that the Court limit the alleged class period for which Plaintiffs seek to recover damages arising from Defendants' conduct from September 21, 2001, to the present.  (*See* Doc. 53 at ¶¶ 3, 56.)   In particular, Defendants argue that Plaintiffs' prudence claim relating to the requirement that matching contributions be invested solely in the Fifth Third Stock Fund fails with respect to investments in Fifth Third Stock from January 1, 2004 to the present because, effective January 1, 2004, the

Plan was amended, in part, to permit Plan participants, immediately after a matching

contribution is invested in the Fifth Third Stock Fund, to direct their matching

contributions to other investment options.  (*See* Doc. 62 at p. 22.)

Defendants argument is unavailing at this stage of the litigation.  *See In re AEP*

*ERISA Litig.*, 327 F. Supp. 2d at 829.  Whether Plaintiffs could exercise such

"independent control" over their accounts is relevant to determining whether defendants

are entitled to assert a defense under section 404(c) of ERISA, 29 U.S.C. § 1104(c).[4]

"Section 404(c) provides defendants with a defense to liability; it does not mean that

[Plaintiff have] failed to make out a claim against them."  *See In re AEP ERISA*

*Litigation*, 327 F. Supp. 2d at 829 (quoting *Rankin v. Rots*, 278 F. Supp. 2d 853, 872

(E.D. Mich. 2003)); *see also Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1367 (N.D.

Ga. 2005) (and cases cited therein).

The Outside Directors also seek to limit the Class Period to events preceding

---

[4]     Section 404 of ERISA provides in pertinent part:

(c) Control over assets by participant or beneficiary

(1) In the case of a pension plan which provides for individual accounts and
permits a participant or beneficiary to exercise control over the assets in his
account, if a participant or beneficiary exercises control over the assets in his
account (as determined under regulations of the Secretary)-(A) such participant or
beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and

(B) no person who is otherwise a fiduciary shall be liable under this part for any
loss, or by reason of any breach, which results from such participant's or
beneficiary's exercise of control.

29 U.S.C. § 1104.

January 31, 2003. They maintain that Plaintiffs failed to allege any conduct taken by the Outside Directors after that date that would constitute a breach of the duty of prudence. (*See* Doc. 65 at pp. 14-16.) In support of their argument, they contend that the only detailed allegations provided by Plaintiffs focus on the merger with Old Kent, the Treasury impairment, and the regulatory investigation and its conclusions, which were announced by Fifth Third on January 31, 2003. (*Id.* at 15.) Their argument is unavailing at this stage of the case..

Plaintiffs' claim of a breach of fiduciary duty is supported by their allegations that the Outside Directors were fiduciaries who, acting in their capacity as fiduciaries, breached their duty by imprudently allowing Fifth Third stock to remain an investment option (even after January 31, 2003). (*See* Doc. 53 at ¶¶ 5, 19(a)-(q), 49-55, 84-91.) The allegations are sufficient to state claim upon which relief can be granted and to comply with the minimal pleading requirements of Fed. R. Civ. P. 8. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2005 WL 563166, at * 5-6 (citing *Swierkiewicz v. Sorena N.A.*, 534 U.S. 506 (2002)).

Accordingly, Defendants' motions to dismiss are **DENIED** in part with respect to their assertions that Plaintiffs failed to state a claim under Count I for a failure by all Defendants to prudently and loyally manage the Plan's assets.

**B. Whether Plaintiffs' claims should be dismissed as a matter of law to the extent they are based on allegations of material misrepresentations or omissions.**

In Count II of the Amended Class Action Complaint, Plaintiffs allege that the

failure of all Defendants to provide complete and accurate information to plan

participants and beneficiaries constitutes a breach of fiduciary duties in further violation

of ERISA § 404. (*See* Doc. 53 at p. 38-40.) Plaintiffs' allegations include a claim that

Defendants breached their duty to inform participants:

> by failing to provide complete and accurate information regarding Fifth
> Third Stock, making material misrepresentations about the company's
> merger with Old Kent and the status of its internal controls and, generally,
> by conveying inaccurate information regarding the soundness of Fifth Third
> Stock and the prudence of investing retirement contributions in the stock.

(I*d.* at ¶ 120.)

Defendants seek dismissal of the complaint to the extent it is based on alleged

material misrepresentations for the following reasons: (1) statements made in press

releases and in documents filed with the SEC are not actionable under ERISA; (2) the

alleged misrepresentations are not "material;" (3) there is no general duty of disclosure

under ERISA; and (4) Plaintiffs failed to satisfy the pleading requirements of Rule 9(b).

*1. Whether statements made in press releases and in documents filed with the SEC are actionable under ERISA*

Defendants maintain that Plaintiffs fail to state a claim of misrepresentation based

on statements made in press releases and in document filed with the SEC because such

disclosures were not made in context with the Plan, Plan participation or Plan benefits.

*See Varity Corp. v. Howe*, 516 U.S. 489, 504-05 (1996) (to qualify as a fiduciary

statement, the statement must be intentionally and directly connected to the retirement

plan); *Husvar v. Rapoport*, 430 F.3d 777, 782 (6th Cir. 2005) (noting that "day-to-day

corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits [do not have to] be performed solely in the interest of plan participants"(internal citation omitted); *Marks v. Newcourt Credit Group*, 342 F.3d 444, 454 n.2 (6th Cir. 2003) (the misrepresentation in question must involve the availability of or extent of plan benefits); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 865 (N.D. Ohio 2006) (alleged misrepresentations made in public statements that were not specifically tied to plan benefits are not actionable under ERISA). A fiduciary is not liable under ERISA "simply because it made statements about its expected financial condition" or "because an ordinary business decision turned out to have an adverse impact on the plan." *Varity Corp.*, 516 U.S. at 505.

Thus, the allegations will be found sufficient to state a claim based on misrepresentations in SEC disclosures, press releases and other public documents only to the extent those statements were incorporated into the Plan's documents and/or disseminated to the Plan's participants. *In re The Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d at 795 (citing *Ferro*, 422 F. Supp. 2d at 865). *See also In re Electronic Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 672-73 (E.D. Tex. 2004) (finding that the plaintiff stated a claim for a breach of the duty to inform where the defendant misled plan participants in its public filings about the risks of investment in the company's stock).

Plaintiffs allege that Defendants failed to provide complete and accurate information regarding Fifth Third Stock, made material misrepresentations about the

company's merger with Old Kent and the status of its internal controls, and conveyed inaccurate information regarding the soundness of the stock.  (*See* Doc. 53 at ¶ 120). They allege that Defendants regularly communicated with employees, including the Plan's participants, about Fifth Third's performance, future financial and business prospects, and Company Stock (*see* Doc. 53 at ¶ 92) and, significantly, that Defendants made false and materially misleading statements, in the media, in SEC filings, and in public statements that were incorporated into materials sent to Plan participants (*see id.* at ¶ 83).

Taking the allegations as true, the Court finds that the alleged misrepresentations made in SEC disclosures, press releases and other public documents provide an "actionable" basis for Plaintiff's claims.

2.	*Whether the alleged misrepresentations are "material"*

To state a claim for breach of fiduciary duty arising from misrepresentation, Plaintiffs must demonstrate that the misrepresentations were "material."  *See James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002), *cert. denied*, 538 U.S. 1033 (2003).  Generally, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision.  *In re Unisys Corp. Retiree Medical Ben. ERISA Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995), *cert. denied*, 517 U.S. 1103 (1996); *see also Fischer v. Philadelphia Elec. Co.*, 994 F.2d 133, 135 (3d Cir.), *cert. denied*, 510 U.S. 1020 (1993).  In an investment context, a misrepresentation is material only if "there [is] a substantial likelihood that it

would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies in" a particular investment option.  *In re Duke Energy ERISA Litig.*, 281 F. Supp 786, 792 (W.D. N.C. 2003) (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 442 (3d Cir.), *cert. denied*, 519 U.S. 810 (1996)).

Generally, whether an  ERISA fiduciary's misrepresentation was material is a mixed question of law and facts.  *See James*, 305 F.3d at 449.  Moreover, courts have found that whether challenged communications constituted misrepresentations and whether they were material are questions properly left for trial.  *See In re AEP ERISA Litig.*, 327 F. Supp. 2d at 832 (citing *In re Unisys Sav. Plan Litig.*, 74 F.3d at  443). Defendants contend that there is "ample authority supporting the proposition that when it is clear that a particular financial misstatement could not possibly be significant to a reasonable investor due to its small magnitude, a court may properly determine on a motion to dismiss that the misstatement was immaterial as a matter of law."  *In re Duke Energy ERISA Litig.*, 281 F. Supp 2d. at 792 (quoting *In re Newell Rubbermaid, Inc. Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279, at *8 (N.D. Ill. 2000)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1427 (3d Cir.1997) (changes that increased defendants' costs by 0.2% during the relevant period immaterial as a matter of law); *Glassman v. Computervision Corp.*, 90 F.3d 617, 633 (1st Cir.1996) (alleged non-disclosure of a change of a few percent of backlog levels immaterial as a matter of law).   "The Sixth Circuit, however, has never so held," *In re Envoy Corp. Sec. Litig.*, 133 F. Supp. 2d 647, 662 (M.D. Tenn. 2001), and this Court declines to do so now.

Accordingly, Defendants' motions to dismiss on the ground that the alleged misrepresentations are not material are **DENIED**.

*3. Whether there is a general duty of disclosure under ERISA*

Defendants also seek dismissal on the ground that Plaintiff failed to state a claim under Count II of the Amended Class Action Complaint for a breach of the duty to disclose. Defendants maintain that ERISA does not impose a duty to disclose.

Although the United States Supreme Court has expressly declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, or in response to employee inquiries, *see Varity Corp.*, 516 U.S. at 506, the Sixth Circuit has held that "[a] fiduciary must give complete and accurate information in response to participants' questions." *Krohn*, 173 F.3d at 547 (quoting *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992), *cert. denied*, 508 U.S. 940 (1993), and citing *Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 451 (6th Cir. 1993)).

Additionally, courts have found a duty to inform that may be breached where a fiduciary creates an inaccurate impression of the future prospects of the company, *see In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477-79 (S.D.N.Y. 2005); provides misleading information about soundness of company stock, *see In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 916 (E.D. Mich. 2004); or fails to disclose fraudulent accounting practices, *see In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 562 (S.D. Tex. 2003).

Contrary to Defendants' assertions, the Court finds that a duty to disclose exists under ERISA and that Plaintiffs have stated a claim for a breach of that duty. *See, e.g., James*, 305 F.3d at 455 (holding that "the basic concept of a fiduciary duty . . . 'entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful'") (citations omitted). According to Plaintiffs' allegations, Defendants regularly communicated with employees, including the Plan's participants, about Fifth Third's performance, future financial and business prospects, and Company Stock, which was the largest single investment in the Plan. (*See* Doc. 53 at ¶ 92). A claim is actionable for allegedly not disclosing negative information concerning investment in Fifth Third Stock, such that the Plan's participants could not appreciate the true risks presented by investments in Fifth Third Stock and therefore could not make informed decisions regarding investments in the Plan.

4. *Whether the pleading requirements of Rule 9(b) apply*

Defendants assert next that the Amended Class Action Complaint should be dismissed because the allegations of misrepresentation are insufficient to satisfy the pleading requirement of Fed. R. Civ. P. 9(b).[5]

As previously noted, the heightened pleading requirements of Rule 9(b) do not apply to a claim for a breach of fiduciary duty that is distinct from a claim "sounding in

---

[5] Rule 9 provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

fraud." *See In re General Motors ERISA Litig.*, 2006 WL 897444, at *15. "Fraud arises from the plaintiff's reliance on the defendant's false representations of material fact, made with knowledge of falsity and the intent to deceive." *Id.* at *14.

Plaintiffs contend that their misrepresentation claim does not sound in fraud. (*See* Doc. 73 at p. 38.) The Court agrees.

Notwithstanding Plaintiffs' allegations that Defendants made several false and materially misleading statements (or knew or should have known about the false and materially misleading statements), the premise of their breach of fiduciary duty claims is Defendants' failure to disclose accurate information about the Company's financial situation. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1174 (D. Minn. 2004). Where the plaintiffs do not claim to have been defrauded, Rule 9 does not apply. *Id.* at 1179.

*5. Whether Plaintiffs fail to state a claim that Outside Directors are guilty of any fraudulent misrepresentations*

In their separately filed motion to dismiss (Doc. 65), the Outside Directors also seek dismissal of claims against them on the ground that Plaintiffs' conclusory allegations are insufficient to state a claim based on fraudulent misrepresentation. Insofar as their argument is based on their assertion that plaintiffs have not satisfied the stringent pleading requirements of Rule 9(b), the argument lacks merit.

In sum, Defendants' motions to dismiss are **DENIED** in part with respect to their assertions that Plaintiffs failed to state a claim for which relief can be granted under

Count II  based on allegations of material misrepresentations or omissions.

**C.  Whether the Amended Class Action Complaint should be dismissed to the extent it asserts claims on behalf of and seeks damages allegedly suffered by, the Plan after January 31, 2003.**

Defendants (Fifth Third Defendants and the Outside Directors) next seek dismissal of claims based on misrepresentations or omissions arising after January 31, 2003 on the grounds that Plaintiffs failed to allege any conduct constituting a breach of fiduciary duty after that date or to allege any damages suffered by the Plan as a result of investments after that date.

Additionally, the Fifth Third Defendants point to disclosures made on or after January 31, 2003, as alleged in the Amended Class Action Complaint, that revealed an alleged "lack of meaningful internal controls" and the corrective actions proposed to address the deficiencies.  (*See* Doc. 53 at ¶¶ 74-76).  Defendants cite the general rule, under the securities laws, that liability based on material misrepresentations or omissions is terminated when curative information is publicly announced or otherwise effectively disseminated.  *See Sherin v. Gould*, 115 F.R.D. 171, 174 (E.D. Pa. 1987) (citing *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D. Cal. 1982)); *see also In re Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572, 579 (D. Colo. 2001).  The federal courts have held that a class action cannot be maintained on behalf of class members who have invested in securities only after the material information that allegedly was misstated and/or withheld has been corrected and disclosed.  *See In re LTV Sec. Litig.*, 88 F.R.D. 134, 147-48 (N.D. Tex. 1980); *In re Ribozyme Pharm., Inc. Sec. Litig.,* 205 F.R.D. at

-30-

579-81. Courts have also held that "obligations imposed upon fiduciaries by ERISA must be construed consistently, rather than to be in conflict with, the securities laws." *See Pietrangelo v. NUI Corp.*, No. Civ. 04-3223(GEB), 2005 WL 1703200, at *10 n.1 (D.N.J. July 20, 2005); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d at 565 (holding that ERISA and the federal securities statutes should be construed to require disclosure by company officials and plan fiduciaries of the company's material financial status to the investing public generally, including plan participants).

In response Plaintiffs assert that the January 31, 2003 disclosure should not be deemed to cut off their misrepresentations claim because factual disputes exist as to whether the disclosure was "curative." In support of their assertion, they point to additional corrective information that was released throughout 2003. (*See, e.g.,* Doc. 53 at ¶ 64 (alleging that stock price dropped sharply on February 3, 2003, the first trading day following the January 31, 2003 announcement); *id.* at ¶ 75 (announcement on March 26, 2003 that Federal Reserve and Fifth Third had entered into a formal agreement in connection with Fifth Third's break-down in internal operational, banking and financial controls).

The Court finds Plaintiffs' argument is persuasive at this stage of the case.

Whether a release of corrective information terminates liability based on misrepresentations or omissions is a determination of "whether the facts which underlie the gravamen of the plaintiff's complaint continue to represent a reasonable basis on which an individual purchaser or the market would rely." *In re Data Access Sys. Sec.*

*Litig.*, 103 F.R.D. 130, 143 (D.C.N.J. 1984).  "[D]oubts regarding the reasonableness of

the reliance should be resolved in favor of extending the class period." *Id.* (citing *In re*

*LTV Sec. Litig.*, 88 F.R.D. at 147)).

Accordingly, Defendants' motions to dismiss are **DENIED** in part with respect to

their assertions that claims based on misrepresentations or omissions (and resulting

damages) arising after January 31, 2003 should be dismissed.

**D.   Whether Plaintiffs fail to state a claim for which relief can be granted in
Count III based on breach of the duty to monitor.**

In Count III of the Amended Class Action Complaint, Plaintiffs allege that Fifth

Third and Schaefer (as well as the Outside Directors) breached their duty to monitor other

fiduciaries.  (Doc. 53 at ¶ 128).

The Fifth Third Defendants seek dismissal of Count III on the ground that

Plaintiffs failed to allege any facts showing that Schaefer breached his duties arising out

of his appointment powers or that Fifth Third had a duty to "appoint, evaluate or monitor"

the Committee defendants[6] or the Investment Advisors.  They further contend that where

a plan only gives a fiduciary the power to appoint or remove an appointee, the fiduciary's

obligations can extend only to the acts of appointment or removal.  *See Adolescent*

*Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 569 (7th Cir. 1991), *cert. denied*,

---

[6]        As previously noted (*supra*, note1), the Fifth Third Pension and Profit Sharing
Committee ("the Committee") includes the following:  Paul L. Reynolds, Neal E. Arnold,
Michael D. Baker, Michael K. Keating, Robert P. Niehaus, Stephen J. Schrantz, Greg D.
Carmichael, Kevin Kabat, Pete Pesce, and  Robert Sullivan.  (*See* Doc. 53 at ¶¶ 20-30.)

502 U.S. 1099 (1992); *Kuper v. Quantum Corp.*, 838 F. Supp. at 348.

"Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees." *In re Xcel Energy*, 312 F. Supp. 2d at 1176 ; *see also Leigh*, 727 F.2d at 134-35 (appointment power includes duty to monitor appointees' actions).  Moreover, a failure to monitor appointees leads to liability.  *Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y 1998).

The ongoing responsibilities of an appointing fiduciary requires that:

[a]t reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

*Liss*, 991 F. Supp. at 311 (citations omitted).

The duty to monitor also includes a duty to take action upon discovery that appointed fiduciaries are not performing properly.  *Id.*   "A failure to monitor appointees and to remove non-performing fiduciaries thus renders the appointing fiduciary jointly and severally liable for the appointed fiduciaries' breaches." *Id.* (citations omitted).

Plaintiff allege that allege that § 2.5 of the Plan gives Schaefer, as Fifth Third's President and Chief Executive Officer, the power to appoint members of the Committee, and that § 11.2 of the Plan gives the Outside Directors authority to delegate certain of their duties.  Plaintiff also allege that §§ 6.1 and 6.2 of the Trust Agreement gives Fifth Third the power to designate and remove any of the Trustees for the Plan.

Plaintiff allege that Fifth Third and Schaefer (as well as the Outside Directors)

-33-

breached the duty to monitor, *inter alia*, by failing to appoint proper fiduciaries of the Plan, failing to monitor the performance of the appointed fiduciaries to make sure that they were complying with their responsibilities under ERISA and failing to provide material information concerning Fifth Third's financial and operating problems, which were necessary for the appointed fiduciaries to fulfill their responsibilities to the Plan and the participants. (*See* Doc. 53 at ¶¶ 127-34.)

Contrary to Defendants' assertions, Plaintiff have alleged sufficient facts to state a claim for a breach of the duty to monitor by Fifth Third, Schaefer, and the Outside Directors.

Accordingly, Defendants motion to dismiss Count III of the Amended Class Action for failure to state a claim for which relief can be granted is **DENIED**.

**E. Whether Defendants Fifth Third and Schaefer did not suffer from an actionable conflict of interest**.

In Count IV of the Amended Class Action Complaint, Plaintiffs allege that Fifth Third, Schaefer, and the Outside Directors breached their duty of loyalty by placing their interests before the interests of the Plan and its participants. (Doc. 53 at ¶ 138.) Plaintiffs allege in part that these defendants breached their duty to avoid conflicts of interest (and to promptly resolve them) by failing to engage independent fiduciaries, by failing to notify federal agencies of the questionable transactions which made Fifth Third Stock an unsuitable investment for the Plan and, by doing so, to prevent drawing attention to the Company's inappropriate practices. (*Id.* at ¶ 139.) In further support of their conflict of

interest claims, Plaintiffs further allege that Defendants engaged in such conduct in order to use Company stock as currency for acquisitions to meet pre-set growth targets, thereby triggering substantial bonus compensation for Defendants. (*See id.* at ¶ 79).

Defendants seek dismissal of Count IV on the ground that the allegations that the bonus compensation structure was tied to "pre-set growth targets" is insufficient to state a claim for breach of the duty of loyalty under ERISA.

The duty of loyalty requires that "all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries." *Kuper v. Iovenko*, 66 F.3d at 1458; *see also* 29 U.S.C. § 1106(b) (prohibiting fiduciary transactions that conflict with the interests of plan participants). To state a claim for a breach of the duty of loyalty based on a conflict of interest, a plaintiff must allege facts to show the defendant took a fiduciary action with respect to the Plan. *See In re WorldCom, Inc.*, 263 F.Supp. 2d 745, 768 (S.D.N.Y. 2003).

Defendants correctly note that a conflict of interest does not exist simply because a fiduciary holds company stock and is paid according to company performance. *See id*; *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d at 479; *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 987 (C.D. Cal. 2004). However, where the interests of the individual Defendants, as corporate officers, to protect the company and their own assets, conflicted with their interests to protect the Plan, allegations that the individual Defendants took no ameliorating steps such as appointing an independent fiduciary or seeking independent advice sufficiently states a claim at this stage of the case for breach of the duty to avoid

conflicts of interest.  *See In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d at 866 (citing *In re Electronic Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d at 673-74).

    **F.  Whether Plaintiffs fail to state a claim for co-fiduciary liability**.

In Count V of the Amended Class Action Complaint, Plaintiffs allege that Fifth Third, Schaefer, and the Outside Directors are also liable as co-fiduciaries under ERISA § 405, 29 U.S.C. § 1105(a).  Section 405 provides that a co-fiduciary may be liable for breaches by other fiduciaries if he knowingly participated in or concealed breach; failed to exercise fiduciary duty enabled breach; or knew of the breach and failed to take steps to cure that breach.  *See* 29 U.S.C. § 1105(a).

Defendants seek dismissal of Count V on two grounds.  First, that Plaintiffs failed to rebut the presumption of reasonableness to which Defendants are entitled when investing in company stock.  This argument fails, as explained *supra*, pp. 19-20, to the extent Defendants may be entitled to the presumption, as Plaintiffs have alleged sufficient fact to state a claim for a breach of the duty of loyalty at this stage of the case.  While a co-fiduciary claim may be dismissed where the underlying claims have been dismissed for failure to state a claim, *see In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030 RMW, 2002 WL 31431588, at *17 (N.D. Cal. Sept. 30, 2002), that is not the case here.

Second, Defendants contend that the co-fiduciary claims should be dismissed because the allegations that Fifth Third and Schaefer acted with "knowledge" are conclusory.  *See Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983) ("the fiduciary must know the other person is a fiduciary with respect to the plan, must know

that he participated in the act that constituted a breach, and must know that it was a breach"), *cert. denied*, 467 U.S. 1251 (1984).  The Court disagrees.

Plaintiffs have done more than simply repeat the language of the co-fiduciary statute.  *See In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1230 (D. Kan. 2004) (dismissing ERISA complaint where plaintiff pleaded conclusory allegations that merely "parrot[ed]" the language of the statute).

Here, Plaintiff allege that Fifth Third and Schaefer had knowledge of the factual matters pertaining to the imprudence of Fifth Third Stock as an investment for the participants' retirement assets and participated in and/or knew about the Company's misrepresentations about and problems with the merger and the break down in internal controls (and the consequent artificial inflation of the value of Fifth Third Stock ).  (*See* Doc. 53 at ¶ 143).  They allege that Schaefer and the Outside Directors knew that inaccurate and incomplete information had been provided to participants and failed to remedy the breach by ensuring that accurate disclosures were made to participants and the market as a whole.  (*See id.* at ¶ 145.)  They allege further that these defendants failed to provide other Defendants, *e.g.*, Pension and Profit Sharing Committee Defendants and Fifth Third Investment Advisors, with accurate information concerning the Company's break-down in internal controls and artificial inflation of the stock and the dissemination of materially inaccurate and incomplete information in the Plan documents.  (*See id.* at ¶ 146.)

The allegations in the Amended Class Action Complaint are sufficient to place

Defendants on notice of the basis for Plaintiffs' co-fiduciary liability claims against them and to withstand a motion to dismiss under 12(b)(6). *See In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d at 857 (noting that the complaint "need only give fair notice as to the claim and the grounds upon which it rests").

Accordingly, Defendants' motion to dismiss Count V is **DENIED**.

**G. Whether Plaintiffs' allegations of Fifth Third's purported knowing participation in breaches of fiduciary duties are wholly conclusory and improperly seek monetary damages under ERISA § 502(a)(3)**.

In Count VII, Plaintiffs maintain that, in the event Fifth Third is found to be a nonfiduciary, they can still recover equitable relief based on Fifth Third's knowing participation in breaches of fiduciary duties by other defendants.

Defendants next seek dismissal of Count VII the Amended Class Action Complaint on the grounds that the "equitable relief" sought by Plaintiffs can not include money damages against a nonfiduciary. They also maintain the allegations of knowing participation are conclusory.

Under ERISA § 502(a)(3) authorizes a civil action by a participant, beneficiary, or fiduciary against a nonfiduciary but limits recovery by such parties to "appropriate equitable relief." *See* 29 U.S.C. § 1132(a)(3); *Mertens*, 508 U.S. at 255; *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at 1025-26. Plan participants may seek money damages on behalf of the plan where the recovery goes to the plan itself, but such a claim is deemed to have been brought on behalf of the Plan pursuant to § 502(a)(2). *See In re The Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d at 795-96. A section

-38-

502(a)(2) action is, however, limited by its terms to actions against fiduciaries.  *In re WorldCom, Inc.*, 263 F.Supp. 2d at 758-59 (citing *Mertens*, 508 U.S. at 253).  Thus, even though plan participants may seek money damages in a suit brought on its behalf by plan participants, they can only recover such damages against fiduciaries.

Accordingly, Defendants' motion to dismiss Count VI is **GRANTED** to the extent that Plaintiffs seek to recover money damages against Fifth Third as a nonfiduciary.

Defendants' motion to dismiss Count VI on the ground that the allegations of Fifth Third's knowing participation are conclusory is also **DENIED**.  Plaintiffs allege, *inter alia*, that Fifth Third, through its officers and employees, withheld material information from the market and provided the market with misleading disclosures (*see* Doc. 53 at ¶ 143), enabled breaches by other defendants, and failed to make any effort to remedy those breaches, despite having knowledge of them (*see id.* at ¶ 132), and benefitted from the breaches by discharging its obligations to make contributions to the Plan while the value of the stock was inflated (*see id.* at ¶ 152).  These allegations are sufficient to state a claim for relief under § 502(a)(3).

**H.  Whether Counts III through VI of the amended class action complaint are not supported by an underlying breach of fiduciary duty and must be dismissed as a matter of law.**

Defendants seek dismissal of Counts III through VI on the grounds that these claims are "derivative" of the underlying prudence and misrepresentation claims set out in Counts I and II.   Defendants also argue that Counts III through V must be dismissed because they are dependent on the existence of an underlying breach of fiduciary duty

that has not been proven.

While derivative claims are subject to dismissal where the underlying claims fail to state a claim for which relief can be granted, *see In re Duke*, 281 F. Supp. 2d at 795, that is not the case. here.  Insofar as the Court finds that the Amended Class Action Complaint alleges sufficient facts to state a claim for relief to survive the instant motion to dismiss, Defendants' motion to dismiss Counts III though VI as derivative lacks merit.

Moreover, Plaintiffs are not required to "prove" the underlying breach of fiduciary at this stage in the litigation.  *See, e.g., In re The Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F.Supp.2d at 794 ("neither [Rule 8 or Rule 12(b)(6)] require Plaintiffs to prove their case on the pleadings").

Accordingly, Defendants' motions to dismiss Counts III though VI on these grounds are **DENIED**.

**I.  Whether the Outside Directors' motion in the alternative for a more definite statement should be granted.**

The Court finds that the motion in the alternative for a more definite statement under Rule 12 is not well taken.  As evidenced by the lengthy and thorough pleadings submitted in this case, the complaint is not "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."  *See Kok*, 154 F. Supp. 2d at 781-82 (S.D.N.Y.2001).

-40-

## IV.  CONCLUSION

For the reasons stated, **IT IS HEREIN ORDERED THAT** Defendants' motions to dismiss Plaintiffs' amended class action complaint (Doc. 62, 65) are **DENIED**, except as to any claims for monetary damages against Fifth Third as a nonfiduciary.

**IT IS SO ORDERED**.


Date:   4/9/07                                    s/Timothy S. Black
                                                  Timothy S. Black
                                                  United States Magistrate Judge