UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN SHIRK, *et al*., | : | Case No. 05-cv-049 |
| | : | |
| Plaintiffs, | : | Magistrate Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | **MEMORANDUM OPINION AND** |
| FIFTH THIRD BANCORP, *et al*., | : | **ORDER DENYING DEFENDANTS'** |
| | : | **PARTIAL MOTIONS TO DISMISS** |
| Defendants. | : | **SECOND AMENDED COMPLAINT** |

This putative class action case is before the Court on Defendants' partial motions to dismiss (Docs. 182, 185) Plaintiffs' second amended class action complaint (Doc. 169) pursuant to Fed. R. Civ. P. 8(a)(2), 9(b),12(b)(6), 12(e) and 12(f) and the parties' responsive memoranda  (Docs. 213, 225, 226).  The parties have consented to final adjudication by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the following reasons, the Court **DENIES** Defendants' partial motions to dismiss (Docs. 182, 185).

## I.       BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Benjamin Shirk, a former employee of Defendant Fifth Third Bancorp and participant in the Fifth Third Bancorp Master Profit Sharing Plan ("the Plan"), initiated this action by filing a class action complaint on January 26, 2005, alleging, *inter alia*, improprieties in the management and administration of the Plan.  (*See* Doc. 1).

On October 14, 2005, the Court granted Shirk leave to file an amended complaint. (Doc. 52).  Joined by Ronald Jauss, another alleged Plan participant, Shirk filed an amended class action complaint on October 17, 2005.  (Doc. 53).

On January 24, 2006, Defendants Fifth Third Bancorp, Fifth Third Bank, George A. Schaefer, Jr., Paul L. Reynolds, James F. Girton, Joyce Tillman, and the members of the Fifth Third Pension and Profit Sharing Committee (collectively "the Fifth Third Defendants") filed a motion to dismiss Plaintiffs' first amended class action complaint for failure to state a claim and for failure to adequately plead violations of ERISA.  (Doc. 62).  On the same day, a second group of the remaining Defendants, comprised of the Fifth Third Board of Directors (hereinafter "the Outside Directors"), separately filed a motion to dismiss or, in the alternative, a motion for a more definite statement.  (Doc. 65).  On April 9, 2007, the Court denied Defendants' motions to dismiss.  (Doc. 122).

On March 21, 2007 Plaintiffs filed a motion for leave to file a second amended complaint.  (Doc. 121).  On November 28, 2007, the Court granted Plaintiffs leave to file their second amended complaint (Doc. 167), and, on December 8, 2007, Plaintiffs filed the second amended complaint.  (Doc. 169).  In their second amended complaint, Plaintiffs added allegations that Defendants breached fiduciary duties by allowing Fifth Third and its affiliates to charge the Plan and its participants and beneficiaries excessive and unreasonable fees and expenses.  (Doc. 169).

On February 12, 2008, Fifth Third Defendants filed a partial motion to dismiss Plaintiffs' second amended class action complaint as to Counts VII, VIII and IX, *i.e.*, the newly asserted claims relating to allegedly excessive and unreasonable fees and expenses. (Doc. 182).  That same day, the Outside Directors separately (and in joining with Fifth Third Defendants) filed a partial motion to dismiss the new counts.  (Doc. 185).  Plaintiffs filed a memorandum in opposition to Defendants' motions (Doc. 213), and the two Defendant groups separately filed responsive memoranda (Docs. 225, 226).  The motions to dismiss are therefore ripe for consideration.

A.    **The Parties**

Plaintiffs state that they are former Fifth Third employees and current participants in the Plan.  (Doc. 169 at ¶¶ 12-13).  During the alleged Class Period, September 21, 2001 to the present (*see id.* at ¶ 3), as a result of their own and/or the Company's contributions, Plaintiffs acquired and held shares of Fifth Third stock in their respective Plan accounts. (*Id.*)

Defendant Fifth Third Bancorp (collectively, with its subsidiaries and affiliates, "Fifth Third") is an Ohio corporation with its principal executive office in Cincinnati, Ohio.  (*Id.* at ¶ 14).  Fifth Third is a bank holding company subject to regulation by the Board of Governors of the Federal Reserve System.  (*Id.*)  Fifth Third has a second-tier holding company, Fifth Third Financial Corporation, which has six wholly-owned direct subsidiaries: Fifth Third Bank; Fifth Third Bank (Michigan); Fifth Third Community Development Corporation; Fifth Third Investment Company; Old Kent Capital Trust I;

and Fifth Third Reinsurance Company, Ltd.  (*Id.*)

Throughout the alleged Class Period, Fifth Third's responsibilities included, through its Board of Directors and its Chief Executive Officer, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility, including the Fifth Third Pension and Profit Sharing Committee and the Fifth Third Investment Advisors.  (*Id.* at ¶ 15).  Fifth Third exercises discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.  (*Id.*)

Defendant Fifth Third Bank serves as the trustee of the Plan and also exercises discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.  (*Id.* at ¶ 16).

Defendant George A. Schaefer, Jr. ("Schaefer") was at all relevant times the Company's Chief Executive Officer, a member of the Board of Directors, and an alleged fiduciary of the Plan.  (*Id.* at ¶ 17).

Defendants who are members of the Board of Directors (or "Outside Directors") are identified as fiduciaries because they allegedly exercise decision-making authority regarding the appointment of Plan fiduciaries and the management of the Plan's assets. (*Id.* at ¶ 18; *see also id.* at ¶¶ 19(a)-(q)).

Defendant Paul L. Reynolds is a member of the Pension and Profit Sharing Committee[1] and signed the financial reports for the Plan.  (*See id.* at ¶ 21).

Defendant Joyce Tillman signed the Form 5500s for Fiscal Year 2001 for the Plan as the "individual signing as Plan administrator," Defendant James F. Girton signed the Form 5500s for Fiscal Year 2002 for the Plan as the "individual signing as Plan administrator," and both exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets. (*Id.* at ¶¶ 31-32).

Defendant Fifth Third Investment Advisors[2] manage the assets of the Plan.  (*Id.* at ¶ 33).

**B.    The Plan**

According to Plaintiffs, the Plan is a defined contribution profit sharing plan, subject to the provisions of ERISA, with a 401(k) feature and with separate accounts maintained for each participant.  (*Id.* at ¶ 35).  The Plan has two components: (1) a component in which Plan participants make voluntary, pre-tax contributions to the Plan out of their base pay, and (2) a component in which the Company matches a portion of

---

[1]  Nine other members of the Pension and Profit Sharing Committee are named individually as Defendants.  (*See* Doc. 169 at ¶¶ 20-30).

[2]  The "Investment Advisors" are identified simply as "a fiduciary of the Plan because it exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets."  (*See* Doc. 169 at ¶ 33).  Individual advisors are not identified.  Defendants state that "'Fifth Third Investment Advisors' is not a separate, legal entity, but rather is solely a division of Fifth Third Bank and is therefore not a properly named Defendant."  (Doc. 62 at p. 13, n.3).

the participant's contributions to the Plan. (*Id.* at ¶ 2; *see also* ¶¶ 40, 41). Participants are

fully vested in both voluntary and matching contributions. (*Id.* at ¶¶ 40, 42).

The Plan's 401(k) feature offers a variety of investment alternatives of which one,

the Fifth Third Stock Fund, contains shares of Fifth Third Bancorp common stock and

short-term liquid investments. (*Id.* at ¶ 44). Effective December 31, 2001, a participant

with an account invested in the Fifth Third Stock Fund has a right to elect to have

dividends from the fund reinvested in Fifth Third Bancorp common stock or to take the

dividends in cash. (*Id.* at ¶ 48).

### C.    Factual Allegations re Breaches of Fiduciary Duties

Plaintiffs' claims are based, in part, on the following allegations of fact:

On April 2, 2001, the Company acquired Old Kent Financial Corp. ("Old Kent") in a

stock-for-stock transaction valued at $5.5 billion. (*Id.* at ¶ 66). The integration of Old

Kent's operations with Fifth Third's was allegedly "a Herculean undertaking" for which

Fifth Third was unprepared, and for which Fifth Third lacked the experience or

managerial competence to accomplish successfully. (*Id.*) Fifth Third issued press

releases and filed financial reports with the SEC which represented that it had

successfully and seamlessly integrated Old Kent into its operations and was already

experiencing meaningful growth from the acquisition. (*Id.* at ¶ 68). Plaintiffs allege that

Defendants concealed the difficulties encountered in integrating Old Kent into Fifth Third

and the lack of adequate financial controls at Fifth Third necessary to properly manage

the Company and account for Fifth Third's assets and liabilities, and thereby artificially

inflated the Company's publicly traded stock. (*Id.* at ¶ 69). Defendants allegedly concealed from investors the fact that Fifth Third had outgrown its infrastructure and internal financial and operating controls and that the breakdown of financial controls was producing false, misleading, and unreliable financial statements. (*Id.* at ¶ 70).

On September 10, 2002, the Company announced – in a Form 8-K filed with the SEC – that it would be taking a $54 million after-tax ($81.8 million pre-tax) charge for impaired funds, allegedly a one-time, immaterial event resulting from an accounting reconciliation. (*Id.* at ¶ 71). On November 14, 2002, the Company revealed that federal banking regulators and the SEC were investigating whether the Company's rapid growth had outpaced its internal controls and processes. (*See id.* at ¶ 72). Plaintiffs allege that the news of the investigation caused the price of Fifth Third common stock to drop, falling from a November 14, 2002 close of $62.53 to a close of $57.42 the next day, a one-day decline of 8.1%, on extremely heavy trading volume. (*Id.*)

Plaintiffs allege that the Company issued further misrepresentations about the financial impact of the regulatory investigation. (*See id.* at ¶ 73). "In a Form 8-K filed on December 10, 2002, the Company represented that . . . its internal controls were adequate, and that there would be no additional negative financial impact from the $81 million incident." (*Id.*)

On January 31, 2003, however, the Company issued a Form 8-K stating that banking regulators would likely take formal action against it. (*Id.* at ¶ 74). Plaintiffs allege that as a result of this later report, the price of Fifth Third common stock closed at

$52.21 per share on February 3, 2003 (the next trading day), a further decline of 15% from the closing price on November 14, 2002.  (*Id.*)

In further support of their claims that Defendants mishandled the internal operations of the Company, Plaintiffs allege that on March 26, 2003 Fifth Third entered into an agreement with regulatory agencies to dramatically reconstruct its entire system of internal controls.  (*See id.* at ¶¶ 75, 76).  Plaintiffs state that at no time prior to the disclosure of the agreement were investors informed of the depth or severity of Fifth Third's lack of internal financial controls or the risk to investors flowing from those absent controls.  (*Id.* at ¶ 77).

According to Plaintiffs, Fifth Third suffered a chronic, systemic, and internally obvious breakdown of internal accounting controls due a failure to implement and maintain adequate control systems, or due to a knowing and reckless toleration of the failure to use existing controls.  (*See id*. at ¶ 81).

In support of their claims that Fifth Third knew or should have known that Fifth Third stock was not a prudent investment for the Plan, Plaintiffs allege, in part, that Defendants knew of the false and misleading statements (*id.* at ¶ 83), failed to provide Plan participants with information regarding Fifth Third's improper activities (*id.* at ¶ 88), and failed to protect participants against unnecessary losses (*id.* at ¶¶ 89, 90).  Plaintiffs allege, moreover, that Defendants' regular communications with Plan participants fostered a positive attitude toward Fifth Third stock and did not disclose negative material information concerning investment in Fifth Third stock.  (*See id.* at ¶¶ 91, 92).

**D.    The New Claims re Excessive and Unreasonable Fees and Expenses**

In their second amended complaint, Plaintiffs present an additional three claims for recovery for breach of fiduciary duties in violation of ERISA §§ 406(b), 502(a)(2) and 502(1)(3): (1) breach of fiduciary duty - ERISA §502(a)(2) (Count VII); (2) engaging in prohibited transactions in violation of ERISA § 406(b) (Count VIII); and (3) other remedies for breach of fiduciary duty - ERISA § 502(1)(3) (Count IX).

In these three newly filed claims, Plaintiffs allege specifically that Defendants imposed excessive fees and expenses on Plaintiffs and other members of the Class pertaining to their participation in the Plan. (Doc. 169 at ¶ 180). Plaintiffs allege that Defendants loaded the Plan up with several Fifth Third funds that charged excessive and unreasonable fees and expenses to the Plan and its participants and beneficiaries. (*Id*.) Plaintiffs claim, additionally, that Defendants engaged in undisclosed self-dealing by offering Fifth Third mutual funds in the Plan in order to generate seed money that facilitated the marketing of their own proprietary funds and for their own interest. (*Id*. at ¶180). Moreover, Plaintiffs allege that Defendants are responsible for losses caused by the participants' direction of investment in Fifth Third stock because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process as required. (*Id*. at ¶ 200).

### III. STANDARD OF REVIEW

#### A. Motions to Dismiss

On consideration of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996); *see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Nevertheless,

> "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). Thus, a complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. *In re DeLorean Motor Co.*, 991 F.2d at 1240; *see also Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).

In considering a defendant's motion to dismiss, it is proper for the Court to take into account any relevant plan documents. *In re Cardinal Health, Inc. ERISA Litig*., 424 F. Supp. 2d 1002, 1015 (S.D. Ohio 2006). Courts may consider ERISA plan documents not attached to a complaint where a plaintiff's claims are "based on rights under the plans which are controlled by the plans' provisions as described in the plan documents" and where the documents are "incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims." *Id.* (citing *Weiner*, 108 F.3d at 89). Thus, "materials central to the claims asserted, including exhibits to the defendant's moving papers, may be considered when ruling on a motion to dismiss without converting it to a summary judgment motion. *Weiner*, 108 F.3d at 89 (6th Cir. 1997); *see also Butler v. Aetna U.S. Healthcare, Inc.*, 109 F. Supp. 2d 856, 859-860 (S.D. Ohio 1999); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

### B.    ERISA

Congress enacted ERISA in 1974 to "assur[e] the equitable character of [employee benefit plans] and their financial soundness," and "to protect . . . the interests of participants in employee benefits plans and their beneficiaries." ERISA § 2, 29 U.S.C. § 1001. ERISA protects employee benefit plans by, *inter alia*, "setting forth certain general fiduciary duties applicable to the management of both pension and non-pension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). The duties charged to an ERISA fiduciary have been characterized as the "highest known to law." *See Sommers*

-11-

*Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.,* 793 F.2d 1456, 1468 (5th Cir. 1986) (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

A fiduciary's duties under ERISA are set forth in § 404(a)(1)(A) and (B). *See* 29 U.S.C. § 1104(a)(1)(A), (B). The statute provides, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
>
> (A) for the exclusive purpose of:
>
>> (i) providing benefits to participants and their beneficiaries; and
>> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

*Id.*

As explained by the Sixth Circuit, a fiduciary's duty under ERISA has three components: (1) a duty of loyalty; (2) a duty to act as a prudent person would act in a similar situation; and (3) a duty to act for the exclusive purpose of providing benefits to plan beneficiaries. *See Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542 (6th Cir. 1999) (citing *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1162 (6th Cir. 1988)) (internal quotations and citations omitted).

Generally, an individual's liability as a fiduciary is limited to the extent he has

authority to act:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises
> any discretionary authority or discretionary control respecting management
> of such plan or exercises any authority or control respecting management or
> disposition of its assets, (ii) he renders investment advice for a fee or other
> compensation, direct or indirect, with respect to any moneys or other
> property of such plan, or has any authority or responsibility to do so, or (iii)
> he has any discretionary authority or discretionary responsibility in the
> administration of such plan. Such term includes any person designated
> under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A); s*ee also Kuper v. Quantum Chem. Corp.*, 838 F. Supp. 342,

348 (S.D. Ohio 1993) (citing *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984)).

Section 405 of ERISA, however, provides a basis for claims of co-fiduciary

liability for breaches of fiduciary duties:

> In addition to any liability which he may have under any other provisions of
> this part, a fiduciary with respect to a plan shall be liable for a breach of
> fiduciary responsibility of another fiduciary with respect to the same plan in
> the following circumstances:
>
> > (1) if he participates knowingly in, or knowingly undertakes to
> > conceal, an act or omission of such other fiduciary, knowing such act or
> > omission is a breach;
> >
> > (2) if, by his failure to comply with section 1104(a)(1) of this title in
> > the administration of his specific responsibilities which give rise to his
> > status as a fiduciary, he has enabled such other fiduciary to commit a
> > breach; or
> >
> > (3) if he has knowledge of a breach by such other fiduciary, unless
> > he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a); s*ee also In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d

-13-

1002, 1050-51 (S.D. Ohio 2006).

To state a claim for a breach of fiduciary duty under ERISA, a plaintiff must allege that: (1) the defendant was a fiduciary of an ERISA plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty. *See* 29 U.S.C. § 1109; *see also In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at 1016 (citing *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2005 WL 563166, at *2 (S.D.N.Y. Mar. 10, 2005)).

> Under § 502(a)(3), a civil action may be brought ...(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3); *Helfrich v. PNC Bank, Kentucky, Inc*., 267 F.3d 477, 481 (6th Cir. 2001), *cert. denied*, 535 U.S. 928 (2002).  ERISA restricts plan participants to equitable relief with no recourse to money damages on behalf of themselves as individuals.  *See* 28 U.S.C. § 1132(a)(3); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at 1025-26.  Plan participants may seek money damages on behalf of the plan where the recovery goes to the plan itself.  *See In re The Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d 783, 795-6 (N.D. Ohio 2006).  Such an action is deemed to have been brought on behalf of the Plan pursuant to §502(a)(2).  *Id.*

## C.      Pleading Standards Under Rules 8, 9, 12(e) and 12(f)

Rule 8 of the Federal Rules of Civil Procedure provides in part that "[a] pleading

which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

Rule 9 of the Federal Rules of Civil Procedure provides a heightened standard of

pleading to averment of fraud or mistake and requires that "the circumstances constituting

fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Courts have

found that the heightened pleading standard of Rule 9(b) generally does not apply to

claims based on a breach of fiduciary duty under ERISA.  *See In re Cardinal Health, Inc.*

*ERISA Litig.*, 424 F. Supp. 2d at 1016 ("Claims brought under ERISA are subject only to

the simplified pleading standard of Federal Rule of Civil Procedure 8.") (citing

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  While some courts which have

applied Rule 9 where the alleged breach of fiduciary duty is itself based on averments of

fraud, they also separate claims "sounding in fraud" from claims of a breach of fiduciary

duty.  *See, e.g., In re General Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444, at

*14-15 (E.D. Mich. Apr. 6, 2006) (and cases cited therein).  Even where claims

"sounding in fraud" may fail in light of Rule 9, the breach of fiduciary duty claims may

go forward if they satisfy Rule 8.  *See id.*

Rule 12(e) of the Federal Rules of Civil Procedure provides in pertinent part as

follows:

> "If a pleading to which a responsive pleading is permitted is so vague or
> ambiguous that a party cannot reasonably be required to frame a responsive
> pleading, the party may move for a more definite statement before

interposing a responsive pleading.  The motion shall point out the defects complained of and the details desired."

Motions for a more definite statement "generally are disfavored because of their dilatory effect."  *In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 844 (S.D.N.Y. 2001).  A motion under Rule 12(e) should not be granted unless the complaint is "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."  *Kok v. First Unum Life Ins. Co.*, 154 F. Supp. 2d 777, 781-82 (S.D.N.Y. 2001).  If the complaint meets the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, the motion should be denied.  *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994).

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  According to the caselaw of this circuit, the "action of striking a pleading should be used sparingly by the courts."  *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).  Moreover, striking a pleading should be "resorted to only when required for the purposes of justice" and when "the pleading to be stricken has no possible relation to the controversy."  *Id.*

# IV.    LEGAL ANALYSIS

The Fifth Third Defendants seek dismissal of Counts VII, VIII and IX of the second amended complaint on the following grounds: (1) Plaintiffs do not plead any causational nexus or compensable harm to the Plan resulting from any alleged breach of disclosure and all fees and expenses were either specifically disclosed to participants in public documents or disclosure is not required by ERISA; (2) Plaintiffs failed to seek leave of Court to assert a prohibited transaction claim pursuant to ERISA Section 406(b) and therefore Plaintiffs' claim should be stricken pursuant to Fed. R. Civ. P. 12(f); (3) Plaintiffs' fraudulent concealment allegations fail to satisfy the particularity required by Fed. R. Civ. P. 9(b) and thus are insufficient to toll ERISA's six year statute of limitations; (4) Plaintiffs' claim for an accounting is unsupportable because it seeks nothing more than monetary relief duplicative of the relief sought in Count VII and is inappropriate relief not recoverable under ERISA Section 502(a)(3); and (5) Plaintiffs fail to plead any Plan-specific facts or allegations to support their claims as required by Fed. R. Civ. P. 8(a)(2).  (Doc. 182).

The Outside Directors seek dismissal of Counts VII, VIII, and XI on the following grounds: (1) Plaintiffs' complaint contains merely conclusory allegations that fail to state a claim; (2) Plaintiffs fail to include facts as to how the Outside Directors bear some responsibility for the claims of excessive and unreasonable fees; and (3) Plaintiffs' fraudulent concealment allegations are plagiarized and fail to satisfy the requirements of Fed. R. Civ. P. 9(b).  (Doc. 185).

-17-

A.   **Whether Counts VII, VIII and IX Should be Dismissed to the Extent They Are Based on Plaintiffs' Alleged Breach of ERISA Disclosure Obligations**

Fifth Third Defendants present a two part argument in support of their assertion that Counts VII, VIII and IX should be dismissed to the extent they are based on breach of disclosure allegations:[3] (1) Plaintiffs fail to plead any causational nexus or compensable harm or loss to the Plan resulting from any alleged breach of disclosure; and (2) ERISA does not require the disclosure of individual fees and expenses, and the total annual operating expenses of each investment option available under the Plan are expressly disclosed to Plan participants.  (Doc. 182).

Additionally, the Outside Directors argue that Plaintiffs' failure to include facts concerning their responsibility for claims of excessive and unreasonable fees warrants dismissal of such claims.  (Doc. 185).

1.   *Whether Plaintiffs plead a causational nexus or compensable harm to the Plan as a result of Defendants' alleged breach of disclosure obligations*

Plaintiffs allege that Defendants breached their fiduciary duties under ERISA §502(a)(2)[4] by charging unreasonable and excessive fees to the Fifth Third 401(k) Plan.

---

[3]  There are no allegations of breach of disclosure obligations contained in Counts VIII or IX of the second amended complaint.  (Doc. 169 at ¶¶ 179-202).  Accordingly, to the extent Defendants move to dismiss Counts VIII and IX for breach of disclosure obligations, Defendants' motion is **DENIED**.

[4]  Section 502(a)(2) provides for suits to enforce the liability-creating provisions of § 409 concerning breaches of fiduciary duties that harm plans.  The principal statutory duties imposed by § 409 relate to the proper management, administration, and investment of plan assets, with an eye toward ensuring that the benefits authorized by the plan are ultimately paid to plan

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that: (1) the defendant was a plan fiduciary; (2) the defendant's acts or omissions constituted a breach of duty; and (3) the breach caused harm to the plaintiff.  *Pegram v. Herdrich,* 530 U.S. 211, 225-26 (2000).  At issue is the third element, as Defendants contend that Plaintiffs fail to establish the requisite causation to state a claim for breach of fiduciary duty.

Specifically, Defendants claim that Plaintiffs fail to plead a single factual allegation demonstrating how the Fifth Third Defendants' failure to disclose any alleged fees relating to the investment options available under the Plan caused investment losses to the investment options themselves.  (Doc. 182).  Further, they allege that Plaintiffs do not allege a loss by any particular investment option during any particular period of time, but rather assert a naked allegation that the Fifth Third Defendants are liable for investment losses.  (*Id.*)

However, in the second amended complaint, Plaintiffs identify 15 different breaches of Defendants' fiduciary duties which caused harm to Plaintiffs.  (Doc. 169 at ¶ 173, A-O).  For example, the second amended complaint alleges that Defendents breached their fiduciary duty by charging excessive and unreasonable fees which were paid by the Plan and thus borne by the Plan damaging its participants and beneficiaries. (Doc. 169 at ¶¶ 93, 98).  Additionally, Plaintiffs claim that Defendants failed to provide

participants.  *LaRue v. DeWolff, Boberg & Assocs., Inc*., 128 S. Ct. 1020, 1021 (2008).  Pursuant to § 409, a breaching fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach."  29 U.S.C. § 1109.

participants and beneficiaries with sufficient investment information, causing investment losses for participants and beneficiaries.  (Doc. 169 at ¶ 175).  Therefore, an independent reading of the second amended complaint, viewed in the light most favorable to Plaintiffs, adequately states sufficient facts in support of the causation element of an ERISA claim for breach of fiduciary duty.

This Court has already recognized that Defendants had a duty under ERISA to disclose material information about the Plan.  (Doc. 122) ("Contrary to Defendants' assertions, the Court finds that a duty to disclose exists under ERISA and Plaintiffs have stated a claim for a breach of that duty."); *id.* ("A claim is actionable for allegedly not disclosing negative information concerning investments in Fifth Third Stock.") Therefore, the undersigned finds that Plaintiffs have plead sufficient facts in support of a causational nexus alleging harm to the Plan resulting from Defendants' alleged breach of disclosure obligations.  Accordingly, Plaintiffs' motion to dismiss Count VII for failure to plead any compensable harm or loss to the Plan is **DENIED**.

2.    *Whether ERISA requires disclosure of individual fees*

Defendants also seek dismissal on the ground that Plaintiffs fail to state a claim for breach of fiduciary duty because ERISA does not impose a duty to disclose individual fees and expenses.  (Doc. 182).  Conversely, Plaintiffs allege in their Count VIII claim that Defendants breached their fiduciary duties under ERISA by failing to disclose that they were charging the Plan excessive and unreasonable fees.  (Doc. 169 at ¶¶ 172, 173).

Although the United States Supreme Court has expressly declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, or in response to employee inquiries, *see Varity Corp.*, 516 U.S. at 506, the Sixth Circuit has held that "[a] fiduciary must give complete and accurate information in response to participants' questions."  *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (quoting *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992), *cert. denied*, 508 U.S. 940 (1993), and citing *Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 451 (6th Cir. 1993)).

Additionally, courts have found a duty to inform that may be breached where a fiduciary creates an inaccurate impression of the future prospects of the company, *see In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477-79 (S.D.N.Y. 2005); provides misleading information about soundness of company stock, *see In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 916 (E.D. Mich. 2004); or fails to disclose fraudulent accounting practices, *see In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp.2d 511, 562 (S.D. Tex. 2003).

Defendants' argument is twofold: (1) that Plaintiffs' allegation relating to the nondisclosure of "annual operating expenses" of investment options is patently false, and (2) that ERISA's specific disclosure requirements do not require the disclosure of individualized fees and expenses.

Defendants' first argument, whether or not they disclosed their annual operating expenses of investment options, presents a contested issue of fact; and, therefore, it is not appropriate for the Court to address the issue upon motions to dismiss. This Court cannot grant Defendants' motion to dismiss simply because Defendants deny the allegations in the second amended complaint and offer plausible grounds on which to discount the allegations.

Second, Defendants claim that ERISA only mandates the disclosure of total fees and expenses paid by the Plan, not individualized fees and expenses specific to any participants' account. 29 U.S.C. §§ 1021-1023. Accordingly, because the "total operating expenses" for the mutual funds offered as investment options available under the Plan are disclosed in prospectuses, and because ERISA does not require the disclosure of fees and expenses with respect to individualized accounts, Plaintiffs' nondisclosure claim should be dismissed.

Plaintiffs, however, claim that investment information is material and should have been disclosed to Plan participants. (Doc. 213). By failing to disclose this information, Plaintiffs claim that Defendants continued to charge the Plan and its participants excessive and unreasonable fees that helped to inflate Fifth Third's own revenues and

earnings at the expense of the Company's rank-and-file employees.  *(Id.)*  Plaintiffs allege that as a result of this information not being disclosed, participants were not "provided with the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the plan."  (*Id.*)

This Court has already recognized that Defendants had a duty under ERISA to disclose material information about the Plan.  "Contrary to Defendants' assertions, the Court finds that a duty to disclose exists under ERISA and Plaintiffs have stated a claim for a breach of that duty."  (Doc. 122); *see also James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 455 (6th Cir. 2002) (holding that "the basic concept of a fiduciary duty . . . 'entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful'") (citations omitted).  Furthermore, this Court has previously established that "[a] claim is actionable for allegedly not disclosing negative information concerning investments in Fifth Third Stock."  *Id.*

According to Plaintiffs' allegations, Defendants regularly communicated with employees, including the Plan's participants, about Fifth Third's performance, future financial and business prospects, and the value of Company stock, which was the largest single investment in the Plan.  (*See* Doc. 53 at ¶ 92).  A claim is actionable for allegedly not disclosing negative information concerning investment in Fifth Third Stock, such that the Plan's participants could not appreciate the true risks presented by investments in Fifth Third Stock and therefore could not make informed decisions regarding investments in the Plan.

Therefore, Plaintiffs have sufficiently stated a cause of action for breach of fiduciary duty, and Defendants' motion to dismiss because ERISA does not impose a duty to disclose individual fees and expenses is **DENIED**.

3.     *Whether Plaintiffs' alleged failure to include facts as to how the outside directors bear responsibility for claims of excessive and unreasonable fees warrants dismissal*

The Outside Directors claim that the second amended complaint fails to allege any facts indicating how they were involved in selecting the funds to be included in the Plan or in monitoring the fees that those funds charged. (Doc. 185). Therefore, the Outside Directors claim that Plaintiffs did not sufficiently allege their fiduciary status as to these claims and Counts VIII-XI against them should be dismissed. (*Id*.)

"To be found liable under ERISA for breach . . . of fiduciary duty, an individual or entity must be a 'fiduciary.'" *Wright v. Oregon Metallurgical Corp*., 360 F.3d 1090, 1101 (9th Cir. 2004). Directors are not automatically fiduciaries and only attain fiduciary status when they make decisions about plan assets or plan management. *Briscoe v. Fine*, 444 F.3d 478, 487 (6th Cir. 2006).

ERISA defines "fiduciary" as a "person [who] . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets [or] . . . has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This definition of "fiduciary" is drafted "not in terms of formal trusteeship, but in *functional* terms of control and authority over

-24-

the plan, thus expanding the universe of persons subject to fiduciary duties - and to damages - under § 409(a)." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262 (1993) (internal citation omitted).

Section 409(a), which is referenced in § 502(a)(2) of ERISA above, is captioned "[l]iability for breach of fiduciary duty" and provides, in relevant part:

> "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 411 of this Act."

29 U.S.C. § 1109(a).

Defendants first argue that the second amended complaint is devoid of any factual allegations that the Outside Directors directly exercised authority or control over the Plan or its assets.  This argument is unavailing.  In addition to incorporating the applicable statutory language, Plaintiffs make numerous allegations concerning the authority and control exercised by the Outside Directors.  Taking Plaintiffs factual allegations as true, the Outside Directors: (1) had "broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary

responsibility, including the Fifth Third Pension and Profit Sharing Committee and the

Fifth Third Investment Advisors" (Doc. 169 at ¶ 18);  (2) "exercised discretionary

authority with respect to management and administration of the Plan and/or

management and disposition of the Plan's assets" (*id*.; *see also id*. at ¶¶ 19(a)-(q));

and (3) "acted as fiduciaries with respect to the Plan during the Class Period" (*id*. at

¶ 19).

It is clear that it would be premature to determine the Outside Directors'

fiduciary status at this juncture, without additional facts about their conduct other than

those contained in the second amended complaint.  However, this Court previously

addressed this argument in its April 9, 2007, Order, stating that:

> "Implicit in the fiduciary duties attaching to persons
> empowered to appoint and remove plan fiduciaries is the duty
> to monitor appointees . . . [A] failure to monitor appointees
> leads to liability . . .  A failure to monitor appointees and to
> remove non-performing fiduciaries thus renders the appointed
> fiduciary jointly and severally liable for the appointed
> fiduciaries' breaches."

(Doc. 122).

Because Plaintiffs allege that the Outside Directors have wide discretion to

administer and manage benefits under the Plan, the undersigned finds that Plaintiffs

have pled facts as to the Outside Directors status as a fiduciary and their responsibility

and involvement in monitoring the Plan sufficient to survive a motion to dismiss.

In sum, Defendants' motion to dismiss is **DENIED** with respect to their assertion that Plaintiffs fail to state a claim against the Outside Directors for breach of ERISA disclosure obligations.

> **B.** **Whether Count VIII Should be Dismissed Because Plaintiffs Failed to Seek Leave of Court to Assert the Claim**

Fifth Third Defendants next seek dismissal of Count VIII based on the allegation that Plaintiffs failed to seek leave of Court to assert a prohibited transaction claim pursuant to ERISA Section 406(b).  Accordingly, Defendants assert that Count VIII should be stricken pursuant to Fed. R. Civ. P. 12(f).  (Doc. 182).  In the alternative, Fifth Third Defendants claim that Prohibited Transaction Exemption ("PTE") 77-3 exempts them from Section 406(b) liability, requiring dismissal of Count VIII in its entirety.  (*Id.*)

*1.* *Whether Plaintiffs sought leave to include the "Prohibited Transaction" claim in their proposed second amended complaint*

On March 21, 2007, Plaintiffs filed a motion for leave to file a second amended complaint in order to assert two additional claims under ERISA §§ 502(a)(2) and (a)(3) relating to allegations that the Fifth Third Defendants breached their fiduciary duties by failing to adequately disclose information and by allowing Fifth Third and its affiliates to charge excessive and unreasonable fees and expenses to the Plan, thereby damaging its participants.  (Doc. 121).  In support of this motion, Plaintiffs attached a proposed second amended complaint, whereby these additional claims were asserted.  (*Id.*, Ex.

-27-

4).  It is disputed whether Plaintiffs' motion for leave and/or their proposed second amended complaint sought leave of the Court to assert a prohibited transaction claim against the Fifth Third Defendants.  (Docs. 121, 182).  However, it is clear that Plaintiffs' second amended complaint contained allegations at paragraphs 5, 97, 131, 179, 180 and 181 that were *not expressly* included in the proposed second amended complaint.  (Comparing Doc. 121 to Doc. 169).  Accordingly, Fifth Third Defendants request that Plaintiffs' § 406(b) claim be stricken pursuant to Fed. R. Civ. P. 12(f).[5]

The additional allegations asserted by Plaintiffs in the second amended complaint appear to exceed the scope of the Court's grant of leave to amend. However, the Court finds that it is unnecessary to rely upon such a finding, considering Plaintiffs' assertion that they should be permitted to proceed with their second amended complaint in the interest of judicial economy.  (Doc. 182).

For example, the court in *In re One Meridian Plaza Fire Litig.*, No. 91-2171, 1993 U.S. Dist. LEXIS 11126, at *4 (E.D. Pa. Aug. 12, 1993), held that plaintiffs' second amended complaint exceeded the scope of the court's grant of leave to amend. Nevertheless, the court concluded that it would be a waste of judicial resources to strike the allegations, stating:

> "The most technically correct course of action probably would have been for plaintiffs to file an amended complaint

---

[5]  Fed. R. Civ. P. 12(f) provides that: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

> including only those amendments authorized by the April 14
> Order, along with a motion to amend that amended the
> complaint to include the other matters.  However, *it would be
> wasteful to strike this complaint and force plaintiffs to follow
> the above procedure.*  Thus, despite the fact that plaintiffs
> have already filed the new complaint to include the proposed
> amendments, I will evaluate this motion as if the amendments
> were merely proposed."

*Id.* (*emphasis added*); s*ee also, Wallace v. Sys. & Computer Tech. Corp.*, No. 95-cv-

6303, 1997 WL 602808, at *8 (E.D. Pa. Sept. 23, 2007) ("Although plaintiffs have

added some new allegations, they are closely related to the allegations in the first

amended complaint and the general theories of recovery remain the same . . .

Accordingly, this court finds no unfair disadvantage to defendants from allowing the

[second amended complaint]").

   The undersigned finds that the additional facts and allegations included in

Plaintiffs' second amended complaint are not significantly different from the

allegations in the proposed second amended complaint.  For example, in their proposed

second amended complaint, Plaintiffs simply combined the prohibited transaction and

breach of fiduciary duty claims relating to excessive fees together as a single count.

(Compare Docs. 121 and 169).  Plaintiffs also included additional facts in the second

amended complaint to bolster the prohibited transaction and self dealing claims.  (*Id.*)

The Court does not find these changes to be significant enough to require Plaintiffs to

move for further leave to include these allegations in the second amended complaint.

Accordingly, in an effort to minimize wasteful filings and proceed on the merits of this case, the undersigned **DENIES** Defendants' request to strike Count VIII.

2.   *Whether Prohibited Transaction Exemption 77-3 exempts Defendants from 406(b) Liability*

Fifth Third Defendants further argue that PTE 77-3 precludes Plaintiffs from moving forward on their prohibited transaction claim (Count VIII).  (Doc. 182).

PTE 77-3 provides that employers like Fifth Third who offer their own proprietary funds to their employees in a 401(k) Plan are only permitted to charge the Plan a single investment management fee.  *See* PTE 77-3.  This prevents employers like Fifth Third from abusing their fiduciary relationship with the Plan by "double" or "triple-dipping" on their investment management fees.  *See* Preamble to PTE 77-4.

PTE 77-3 applies so long as a plan does not:

(a) pay any fees to the investment adviser except via the investment company's payment of its standard advisory and other fees;
(b) pay a redemption fee to any party other than the investment company itself;
(c) pay a sales commission; and
(d) have dealings with the investment company on terms that are less favorable than between the investment company and any other shareholder.

PTE 77-3, 42 Fed. Reg. 18,734 (1977).

In Count VIII, Plaintiffs allege that Fifth Third Defendants breached their fiduciary

duties by:

> "offering Fifth Third mutual funds in the Plan in order to
> generate seed money that facilitates the marketing of Fifth
> Third's marketing of their own proprietary funds, and by
> offering Fifth Third mutual funds in the Plan that charge
> excessive and unreasonable fees [and by]...exercising
> discretionary control over the funds that were and are offered
> through the Fifth Third 'lifecycle' funds . . . in which the
> Defendants are dealing with the assets of the Plan for their
> own interest and their own account."

(Doc. 169 at ¶ 180).

Section 406(b) of ERISA prohibits fiduciaries from involving plan assets in various

acts of self-dealing or conflicts of interest.  Specifically,

> "[a] fiduciary with respect to a plan shall not deal with the
> assets of the plan in his own interest or for his own account; in
> his individual or in any other capacity act in any transaction
> involving the plan on behalf of a party (or represent a party)
> whose interests are adverse to the interests of the plan or the
> interests of its participants or beneficiaries, or receive any
> consideration for his own personal account from any party
> dealing with such plan in connection with a transaction
> involving the assets of the plan."

29 U.S.C. § 1106(b).

Plaintiffs contend that the Fifth Third Defendants profited from the Plan's

investment in Fifth Third mutual funds.  Plaintiffs allege that Defendants were not

complying with PTE 77-3 and were "[a]llowing the Plan to pay - directly or indirectly -

fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit

of Plan participants and beneficiaries."  (Doc. 169 at ¶ 173, D; ¶ 97).

Defendants argue that PTE 77-3 specifically exempts transactions involving the investment of a bank's own employee benefit plans in mutual funds which are sponsored, advised, or underwritten by the fiduciary bank, or any of its affiliates from Section 406 liability.  Prohibited Transaction Exemption 77-3, 42 FR 18, 734 (1977).  Defendants claim that this applies to the exact conduct by the Fifth Third Defendants of which Plaintiffs complain.  (Doc. 182).

In support of their position, Defendants cite to *Mehling v. New York Life Ins. Co.*, 163 F. Supp. 2d 502, 510 (E.D. Pa. 2001), which dismissed a prohibited transaction claim as a matter of law based on the application of PTE 77-3.  In *Mehling,* the court found that Plaintiffs did not allege that the fees paid by the plan were not in compliance with the requirements of PTE-773 or that the plan had dealings with the investment company on terms less favorable than were offered to other shareholders.  *Id*.  Therefore, the court held that all four conditions of PTE 77-3 were satisfied, and thus PTE 77-3 was not applicable. *Id*.  Conversely, Plaintiffs allege that Defendants engaged in self-interested transactions, profited from the management of Plan assets to the detriment of the Plan, its participants, and beneficiaries, and entered into agreements under which the Plan paid unreasonable fees and expenses.  (Doc. 169 at ¶ 173).  Therefore, taking Plaintiffs' alleged facts as true, PTE 77-3 is applicable in this instance.  However, whether or not Defendants actually complied with PTE 77-3 is a factual question that cannot be resolved on a motion to dismiss.

Accordingly, in the motion to dismiss context, PTE 77-3 does not exempt Defendants from 406(b) liability, and Defendants' motion to dismiss with regard to this claim is **DENIED**.

3.    *Whether Defendants can be held liable for a "per se" violation of § 406(b) because they exercised control over the investments in the Fifth Third "LifeModel" Funds*

The Fifth Third Defendants argue in footnote 5 of their brief that as an alternative to complete dismissal of Count VIII, the Court should dismiss the allegations contained in paragraphs 180 and 181 of the second amended complaint to the extent that Plaintiffs seek to hold Defendants liable for a *per se* violation of ERISA § 406(b) for exercising control over the underlying Fifth Third mutual funds that they offer in their Fifth Third "LifeModel" Funds.  (Doc. 182).  Defendants further argue that they cannot be held liable for a *per se* violation of ERISA § 406(b) because, according to Defendants, the underlying assets in the LifeModel Funds are not "plan assets."  (Doc. 185).

Section 406(b) creates a *per se* ERISA violation.  Section 1106(b) thus creates a *per se* ERISA violation; and therefore, even in the absence of bad faith, or in the presence of a fair and reasonable transaction, § 1106(b) establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting employee benefit plans.  *Gilliam v. Edwards*, 492 F. Supp. 1255, 1263 (D.N.J. 1980) (*citing Cutaiar v. Marshall*, 590 F.2d 523, 529-30 (3rd Cir.1979)); *see also Brink v. DaLesio*, 496 F. Supp. 1350 (D.Md. 1980), *aff'd in part and rev'd in part*, 667 F.2d 420 (4th Cir.1982) (trustee of a pension plan, having accepted gratuities from individuals providing services

to the plan, violated ERISA § 406(b)(3) even though it had not been proven that the

transaction was a *quid pro quo* for the gratuities or that harm had resulted).

Plaintiffs' claim and Defendents acknowledge that ERISA does not define the term

"plan assets."  (Docs. 182, 213).  However, Defendants claim that ERISA clearly identifies

what is "not" considered a plan asset.  Defendants allege that because the "Lifecycle"

funds are mutual funds (an investment company registered under the Investment Company

Act of 1940), the investments of the mutual funds are not considered "plan assets" for

ERISA fiduciary purposes.  ERISA § 401(b)(1); 29 U.S.C. § 1101(b)(1).

However, numerous courts have recognized that the term "plan asset" "should be

construed broadly in order to effectuate Congress's overriding concern with the protection

of plan participants and beneficiaries."  *Patelco Credit Union v. Sahni*, 262 F.3d 897, 908

(9th Cir. 2001).  When determining whether a particular investment qualifies as a "plan

asset," courts have adopted a "functional approach" in which they consider whether the

asset "may be used to the benefit (financial or otherwise) of the fiduciary at the expense of

plan participants or beneficiaries."  *Id*. at 908.

Accordingly, the Court considers whether the underlying mutual funds in the Fifth

Third LifeModel Fund are assets that "may be used to the benefit of [Defendants] at the

expense of plan participants or beneficiaries."  *Patelco*, 262 F.3d at 908.  Plaintiffs address

this issue stating that "Defendants breached their fiduciary obligations to the Plan, Plan

participants and beneficiaries and the Class by . . . profiting from the management of Plan

assets and the administration of the Plan at the expense of, and to the detriment of, the Plan

-34-

and its participants and beneficiaries." (Doc. 169 at ¶ 173, B). Therefore, Plaintiffs allege sufficient facts to support their contention that LifeModel Funds are Plan assets. However, whether or not the Lifecycle Funds are Plan assets, and whether such assets were used to benefit the fiduciary at the expense of the Plan participants or beneficiaries, are questions of fact that cannot be determined at this stage of the litigation.

Therefore, Defendants' motion to dismiss is **DENIED** with respect to their claim that they cannot be held liable for a *per se* violation of Section 406(b).

**C.    Whether Counts VII, VIII and IX Should Be Dismissed to the Extent They Fail to Satisfy the Particularity Required by Fed. R. Civ. P. 9(b) and Therefore are Barred by the Six-Year Statute of Limitations**

Fifth Third Defendants and the Outside Directors claim that Plaintiffs' fraudulent concealment allegations fail to satisfy the particularity required by Fed. R. Civ. P. 9(b)[6] and therefore are insufficient to toll ERISA's six-year statute of limitations.[7] As such, Defendants claim that Counts VII, VIII and IX should be dismissed to the extent they are based upon allegations of ERISA violations for damages preceding December 8, 2001. (Docs. 182, 185).

---

[6] Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

[7] Additionally, the Outside Directors note that the elements of Counts VII and IX and the "Causes of Action" in Plaintiffs' second amended complaint are copied almost entirely from outside complaints. (Doc. 185). Whether or not Plaintiffs lifted language from other complaints to prepare the second amended complaint here does not affect the critical question before the Court: whether Plaintiffs allege facts sufficient to state a cause of action in each of the new counts of their second amended complaint.

*1. Federal Rule 9(b)*

Plaintiffs allege that the Fifth Third Defendants and the Outside Directors fraudulently concealed their purported breaches. (Doc. 169 at ¶¶ 116, 121, 176). Defendants claim that Plaintiffs second amended complaint fails to plead these allegations with the particularity required by Federal Rule 9(b) and, therefore, such allegations should be stricken to the extent they seek damages for breaches of fiduciary duty more than six years prior to the date Plaintiffs filed their second amended complaint.

A plaintiff is required to plead with particularity when the alleged breach of the fiduciary is the fraudulent act. *Concha v. London,* 62 F.3d 1493, 1503 (9th Cir. 1995), *cert. dismissed,* 517 U.S. 1183 (1996). In cases where a fraud, misrepresentation or omission is alleged to have occurred but is not itself the basis of the alleged breach, Rule 9(b) is not applied. *See In re Electronic Data Sys.,* 305 F. Supp. 2d 658, 663 (E.D. Texas 2004) ("not . . . every breach of a fiduciary duty to inform is a scheme to defraud"); *see also, In re General Motors ERISA Litig.*, No. 05-71085, 2006 U.S. Dist. LEXIS 16782, at *48 (E.D. Mich. April 6, 2006) (the heightened pleading requirement of Fed. R. Civ. P. 9(b) does not apply to a claim for a breach of fiduciary duty that is distinct from a claim "sounding in fraud."); *Precision Vascular Sys., Inc., v. Sarcos, L.C.,* 199 F. Supp. 2d 1181, 1191 (D. Utah 2002) (holding that Rule 9(b) did not apply to ERISA breach of fiduciary duty claims that involved elements of fraud or misrepresentation).

In their second amended complaint, Plaintiffs allege that:

> "Pursuant to ERISA § 413, 29 U.S.C. §1113, as set
> forth in detail above, by a campaign of nondisclosure,
> concealment, affirmative misrepresentation and deceit,
> Defendants prevented Plaintiffs from discovering
> Defendants' breaches of fiduciary duty and thus
> delayed the running of the statue of limitations [on]
> Plaintiffs' claims until Plaintiffs discovered them."

(Doc. 169 at ¶ 176).

Defendants claim that federal courts have made clear that such allegations of fraud or concealment seeking to toll ERISA's statute of limitations for breach of fiduciary duty requires pleading with the particularity required by Federal Rule Civ. P. 9(b). *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("the circumstances [must] be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.").

Here, Plaintiffs' breach of fiduciary duty claims are premised on Defendants' failure to act in light of the adverse circumstances that were hidden by the fraudulent conduct. Defendants' duty to act arose as a result of the adverse conditions, not the alleged fraud. Notwithstanding Plaintiffs' allegations that Defendants made several false and materially misleading statements (or knew or should have known about the false and materially misleading statements), the premise of Counts VII, VIII and IX is Defendants' failure to disclose accurate information about the Company's financial situation and the impact of

excessive fees upon the Plan. *See In re Xcel Energy, Inc., Sec., Derivation & "ERISA" Litig.*, 312 F. Supp.2d 1165, 1174 (D. Minn. 2004). Where Plaintiffs do not claim to have been defrauded (but harmed rather by breaches of fiduciary duty), Rule 9 does not apply. *Id*. at 1179.

Regardless of whether Rule 9(b) is implicated, however, this Court finds that Plaintiffs' allegations survive the motion to dismiss. In addition, the allegations sufficiently provide the "who, what, where, and when" of the alleged misrepresentations, thereby satisfying Rule 9(b).

Therefore, Defendants' motions to dismiss Counts VII, VIII and IX for failure to satisfy the particularity required by Fed. R. Civ. P. 9(b) are **DENIED**.

*2.    Whether Plaintiffs' claims are barred by ERISA's six year statute of limitations*

Next, Fifth Third Defendants argue that this Court should dismiss as time-barred any violations that pre-date December 8, 2001, because such violations would be outside ERISA's six year statute of limitations period. (Doc. 182).

Under the statute of limitations, an action brought under ERISA must be filed within the earlier of: (1) six years of the last act or omission, or (2) three years of the plaintiff acquiring "actual knowledge" of the violation. 29 U.S.C. § 1113.

The statute of limitations period is tied to the date when Plaintiffs filed their motion seeking leave to amend, not the date Plaintiffs' filed their second amended complaint.

*U.S. v. Katz*, 494 F. Supp.2d 641, 644 (S.D. Ohio 2006) ("Courts have held that the filing of a motion for leave to amend tolls the running of the statute of limitations."); *Moore v. State of Indiana*, 999 F.2d 1125, 1131 (S.D. Ohio 2005) ("As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion.").

To justify their argument, Defendants counted backwards six years from December 8, 2007, which is the date Plaintiffs filed their second amended complaint.  The operative date for the statute of limitations period, however, is the date when Plaintiffs filed their motion to amend, March 21, 2007.  Therefore, ERISA's six year statute of limitations period runs at least as far back as March 21, 2001, which pre-dates the September 21, 2001 start of the class period in this case.

Accordingly, Defendants' request that this Court strike Plaintiffs' ERISA claims to the extent that they predate December 8, 2001 is **DENIED**.

**D.     Whether Count IX Should be Dismissed Because It Does Not Seek Appropriate Equitable Relief Authorized by ERISA § 502(a)**

Fifth Third Defendants allege that Count IX of Plaintiffs' second amended complaint makes the unsupportable claim for an "accounting" despite the fact that the alleged "equitable" claim seeks nothing more than monetary relief duplicative of the relief

sought in Count VII and is therefore "inappropriate" relief not recoverable under ERISA § 502(a)(3).  (Doc. 182).

ERISA § 502(a)(3) authorizes a Plan participant "to obtain other appropriate equitable relief" to enforce any provision of the ERISA statute.  *See also Varity Corp.*, 516 U.S. at 512 (explaining that Section 502(a)(3) of ERISA "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [section] 502 does not elsewhere adequately remedy").

Plaintiffs have alleged § 502(a)(3) claims in the alternative to § 502(a)(2) claims, given that Defendants are challenging Plaintiffs' right to recover under § 502(a)(2) and given that the ultimate scope of relief may be more extensive under § 502(a)(3).

Plaintiffs are permitted to plead in the alternative and make inconsistent pleadings. "Alternative or even inconsistent pleadings are permitted by Fed. R. Civ. P. 8(e)(2), and inconsistent pleadings cannot be a basis for a motion to dismiss."  *Kentucky Home Mut. Life Ins. Co. v. Dulling*, 190 F.2d 797, 801 (6th Cir. 1951); *Power Mktg. Direct, Inc. v. Pagnozzi*, No. C2-05-766, 2006 U.S. Dist. LEXIS 28932, at *10 (S.D. Ohio May 12, 2006).  The Court need not determine at this stage whether Plaintiffs, if successful, are entitled to relief under § 502(a)(2) and not § 502(a)(3).

The Supreme Court, in *Great-West Life & Annuity Ins. Co. v. Knudson,* held that petitioners who sought the imposition of personal liability on respondents for a contractual obligation to pay money sought only legal, not equitable, relief and thus Section 502(a)(3) did not authorize their action.  *Id.,* 534 U.S. 204, 221 (1993).  However, the Court also

-40-

observed that, where a plaintiff sought not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession by seeking a constructive trust or an equitable lien, such restitution would have been available in equity and was, therefore, permissible under Section 502(a)(3). *Id.* at 213-15, 218; *see also Helfrich v. PNC Bank, Ky. Inc.,* 267 F.3d 477, 481, 482-83 (6th Cir. 2001) (distinguishing a case where the plaintiff sought monetary compensation for a fiduciary's failure to transfer funds and thus sought compensatory relief inappropriate under Section 502(a)(3), from a case where a plaintiff sought to have ill-gotten gains restored -- appropriate restitutionary relief under Section 502(a)(3)).

In this case, because Plaintiffs seek restitution and disgorgement of allegedly ill-gotten profits and other monies that should have flowed to the Plan, this line of authority is no bar to Plaintiffs' claims.

Accordingly, Defendants' motion to dismiss is **DENIED** with respect to their assertion that Count IX does not seek appropriate equitable relief authorized by ERISA.

**E.    Whether Counts VII, VIII and IX Should be Dismissed Pursuant to Fed. R. Civ. P. 8(a)(2)**

Finally, Fifth Third Defendants and the Outside Directors both argue that Counts VII, VIII and IX should be dismissed in their entirety for failure to plead any Plan-specific facts or allegations to support their claims as required by Fed. R. Civ. P. 8(a)(2).[8]  (Docs.

_____

[8] Fed. R. Civ. P. 8(a)(2) states that "[a] pleading that states a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief."

182, 185).[9]

When assessing whether a complaint raises a right to relief, the ordinary rules of construction under Federal Rule 8(a) still apply. Under *Twombly*, a court must still assume the truth of the allegations set forth in the complaint and must draw all reasonable inferences in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

*Twombly* "does not require 'a universal standard of heightened fact pleading, but instead require[s] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Oh v. Imagemark, Inc.*, No. 06 civ 10187, 2007 U.S. Dist. LEXIS 75448, at *6 (S.D.N.Y. Oct. 10, 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)); *see also ATSI Commc'ns v. Shaar Fund Lty.*, 493 F.3d 87, 93 (2d Cir. 2007) (pleading must "raise a right to relief above the speculative level") (quoting *Twombly*, 127 S.Ct. at 1965)).

Defendants claim that the second amended complaint fails to satisfy *Twombly's* flexible plausibility test. However, the second amended complaint alleges that "Defendants breached their fiduciary duties by charging excessive and unreasonable fees and expenses and by failing to take steps to monitor and minimize the fees and expenses

---

[9] The Court observes that Plaintiffs did not have the benefit of the *Twombly* decision at the time they filed their proposed second amended complaint. Plaintiffs' motion for leave to amend was filed on March 21, 2007 in contrast to *Twombly*, 127 S. Ct. 1995, which was decided on May 21, 2007.

charged to the Plan." (Doc. 169 at ¶ 93). The complaint goes on to allege that Defendants were able to charge excessive and unreasonable fees and expenses to the Plan by offering Fifth Third's own, propriety funds in the Plan, and then charging the Plan multiple layers of fees. (*Id*. at ¶¶ 172, 180). In effect, Plaintiffs claim that Defendants were "double" and "triple" dipping on investment management fees by charging the Plan fees at both the Plan level and the mutual fund levels. (*Id*. at ¶¶ 172, 180-81). The practice of "double" and "triple" dipping is strictly prohibited under ERISA and constitutes both a fiduciary breach and a prohibited transaction. *See* Section A.2, *infra*.

The second amended complaint also alleges that Defendants were selecting mutual funds for the Plan in order to increase the mutual fund's asset base, thereby making it easier for Fifth Third to market these funds to retail investors. (Doc. 169 at ¶¶ 172, 180-81). Again, Plaintiffs allege that this practice is strictly prohibited under ERISA. (*Id*.)

Accordingly, the undersigned finds that Plaintiffs have alleged Plan-specific facts to support their claims and therefore Defendants' motions to dismiss on these grounds are **DENIED**.

## V.    CONCLUSION

Arguments in support of dismissal largely focus on bases that go beyond analysis of the factual sufficiency of allegations of the second amended complaint.  The moving Defendants bring their motions under Fed. R. Civ. P. 8(a)(2), 9(b), 12(b)(6), 12(e) and 12(f), but most of their arguments in support of dismissing the new claims in the second amended complaint are more appropriately addressed at trial or perhaps in the context of motions under Fed. R. Civ. P. 56(c).  In many instances, the parties are arguing a motion to dismiss as if it were a closing argument or a motion for summary judgment.  The Court cannot address the truth of the alleged facts at this stage of the litigation.  Rather, the Court adheres to the standard of review applicable under Fed. R. Civ. P. 12(b)(6) and evaluates the factual sufficiency of the second amended complaint *as alleged*.

For the reasons stated, Defendants' motions to dismiss Counts VII, VIII and IX of Plaintiffs' second amended class action complaint (Docs. 182, 185) are hereby **DENIED**.

**IT IS SO ORDERED**.

DATE:  <u>September 26, 2008</u>                    <u>s/ Timothy S. Black</u>
                                                          Timothy S. Black
                                                          United States Magistrate Judge

-44-