UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN SHIRK, *et al.*, | : | Case No. 05-cv-049 |
| | : | |
| Plaintiffs, | : | U.S. Magistrate Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| FIFTH THIRD BANCORP, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
### COUNTS VII-IX OF THE SECOND AMENDED COMPLAINT

This civil action is before the Court upon Fifth Third Defendants' motion for

summary judgment on Counts VII, VIII, and IX (the "Excessive Fee claims") of

Plaintiffs' second amended complaint (Doc. 376) and the parties' responsive memoranda

(Docs. 390, 394). Upon careful review, the Court concludes that the material facts are not

in dispute and that Fifth Third Defendants are entitled to entry of judgment as a matter of

law in their favor on Counts VII-IX of the second amended complaint.

## I.    NATURE OF THE CLAIMS

Plaintiffs and putative Class Representatives, Benjamin Shirk and Ronald Jauss,

are former Fifth Third employees who are and have been participants in the Fifth Third

Bankcorp Master Profit Sharing Plan (the "Plan") during the relevant time period. They

seek to represent a class of thousands of Fifth Third employees and retirees who have also

participated in the Plan, alleging that Defendants breached their fiduciary duty of loyalty

under the Employee Retirement Income Security Act of 1974 ("ERISA") and engaged in self-dealing by unilaterally moving over $233 million dollars in Plan investments from the lowest cost investment options in the Plan to Fifth Third's higher cost investments.

Specifically, in January 2004, the Plan Committee concluded a year long evaluation of the Plan and decided to change the investment options available to Plan Participants. The Plan Committee ultimately decided to remove four Fifth Third Funds and to add in their stead two new Fifth Third Funds as investment options for Plan Participants -- Plan changes that were announced to Plan Participants in late 2003 and implemented in January 2004. The Excessive Fee claims center solely around the investment advisory fees (the "Advisory Fees") charged by these new Fifth Third Fund offerings. (*See* Doc. 376, Exs. 1, 2).

Defendants claim that because Plaintiffs had actual knowledge of the facts underlying their Excessive Fee claims prior to March 21, 2004, those claims in the second amended complaint (Doc. 167) are barred by the three year statute of limitations[1] pursuant

---

[1] Initially, Defendants alleged that the tolling of the statute of limitations did not begin until the second amended complaint was actually filed. (Doc. 169). However, the caselaw is clear that the statute of limitations period is tied to the date (March 21, 2007) when Plaintiffs first filed their motion seeking leave to amend (Doc. 119), not the date Plaintiffs filed the second amended complaint (December 8, 2007). *United States v. Katz*, 494 F.Supp.2d 641, 644 (S.D. Ohio 2006) ("Courts have held that the filing of a motion for leave to amend tolls the running of the statute of limitations."). Accordingly, March 21, 2007 is the operative date for calculating the statute of limitations.

to ERISA § 413, 29 U.S.C. § 1113.[2]

## II.   UNDISPUTED MATERIAL FACTS

1.   The Plan Committee held its quarterly meeting on November 18, 2003, and approved certain proposed changes to the Plan's investment options that had been considered for months as part of a year long evaluation by the Plan Committee.

2.   Plan Participants - including Plaintiffs - were sent HR Direct Newsletters in December of 2003, January of 2004, and Spring of 2004 which:

> (a) identified all new investment options; and

> (b) specifically informed Plan Participants that:

"With the addition of new funds, some existing funds will no longer be offered. If you are enrolled in any of the following funds, you can switch funds between January 2004 and March 2004. If you do not make a selection by March 2004, your funds will automatically default according to the chart below:

Fifth Third Money Mkt. Fund - Fifth Third Stable Value Fund

Fifth Third Fixed Income EB - Fifth Third Bond Fund

Fifth Third Profit Sharing Balanced Fund - Fifth Third LifeModel Moderate Fund

Fifth Third Value Fund for EB - Fifth Third Disciplined Value Fund."

(Doc. 390 at 3, 8, 13-14; Doc. 376, Ex. A, Ex. 7 (Dec. 2003-Nov. 2004 Fifth Third Benefits Newsletters "HR Direct")).

---

[2] The Excessive Fee claims alleged in the second amended complaint do not relate back to the first amended complaint because they do not arise from the same "conduct, transaction, or occurrence set out . . . in the original pleading," as required by Fed. R. Civ. P. 15(c)(2). *See, e.g., Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 516 (6th Cir. 2007). Plaintiffs' first amended complaint related solely to claims of lack of internal controls and the effects of the 2003 Treasury Impairment on the value of Fifth Third stock contained within the single Fifth Third Stock Fund. Plaintiffs' second amended complaint, however, has absolutely nothing to do with these claims of lack of internal controls nor that single Fund. Rather, the second amended complaint relates to allegations of excessive and unreasonable fees charged by six Fifth Third mutual/collective Funds in the Plan.

3.    Plan Participants - including Plaintiffs - were also provided a March 5, 2004 "New 401k Funds Available" Brochure which:

   (a)  provided additional information regarding the new investment options; and

   (b)  specifically informed Plan Participants:

> "For more information about these funds, including sales charges, expenses, historical performance and ongoing fees, you can obtain a prospectus from http://Retire53.com or your financial adviser."

   The Brochure also contained the following admonition:

> "An investor should consider the fund's investment objectives, risks, charges, and expenses carefully before investing or sending money. This and other important information about the investment company can be found in the fund's prospectus. To obtain a prospectus please call 1-800-282-7506 or visit www.53.com. Please read the prospectus carefully before investing."

   (Doc. 390 at 3, 6, 14; Doc. 376, Ex. A, Ex. 8 (Brochure: New 401(k) Funds Available)).

4.    The fees charged in the new investment options were disclosed in 2003-04 prospectuses and semi-annual reports publicly filed by Fifth Third with the SEC multiple times prior to March 21, 2004.

   (Doc. 390 at 5, 11; Doc. 376, Ex. A, Ex. 5 (Shirk Depo. at 34)).

5.    Plaintiffs stated in their depositions that they had access to these publicly filed documents prior to March 21, 2004.

   (Doc. 390 at 2-3, 6, 11-13, 18; Doc. 376, Ex. A, Ex. 5 (Shirk Depo. at 22); Doc. 376, Ex. A, Ex 6 (Jauss Depo. at 28-29)).

6.    Plaintiffs admit in their verified discovery responses that they are relying upon the prospectuses and semi-annual reports publicly filed prior to March 21, 2004.

   (Doc. 390 at 2, 13; Doc. 376, Ex. A, Ex. 3 (Plaintiff Shirk's Amended Responses to Defendants' Second Set of Interrogatories); Doc. 376, Ex. A, Ex. 4 (Plaintiff Ron Jauss' Amended Responses to Defendants' Second Set of Interrogatories)).

7.      Plaintiffs admit that the fees at issue are disclosed in the prospectuses or semi-annual reports filed prior to March 21, 2004.

(Doc. 390 at 3, 5-6, 11; Doc. 376, Ex. A, Ex. 5 (Shirk Depo. at 34)).

## III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV.    ANALYSIS

The sole issue before the Court is whether Plaintiffs' Excessive Fee claims (Counts VII-IX of the second amended complaint) are barred by ERISA's three year statute of limitations. ERISA § 413 specifically provides that no breach of fiduciary duty action can be commenced "three years after the earliest date on which the plaintiff gained actual knowledge of the breach or violation." 29 U.S.C. § 1113.

In determining when the limitations clock starts under the actual knowledge prong, courts look to the "plaintiff's actual knowledge of the underlying conduct giving rise to the alleged violation . . . rather than the knowledge that the underlying conduct violates ERISA." *Wright v. Heyne*, 349 F.3d 321,331 (6th Cir. 2003); *see also Bishop v. Lucent Tech.*, 520 F.3d 516, 521 (6th Cir. 2008) (quoting *Wright*, 359 F.3d at 321, as establishing the "particular definition" of actual knowledge in the Sixth Circuit); *Zirnhelt v. Mich. Consol. Gas. Co.*, 526 F.3d 282, 289 (6th Cir. 2008) (where investor was given plan documents informing her of vesting requirements, actual knowledge was satisfied under the *Wright* standard).

In making this "actual knowledge" determination, courts have "focused on whether documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty, not whether the individual plaintiffs actually saw or read the documents." *Young v. General Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418-419 (S.D.N.Y. 2008), *aff'd*, 2009 U.S. App. LEXIS 9792 (2d Cir. May 6, 2009); *see also Brown v. Owens Corning Inv. Review Comm.*, No. 3:06cv2125, 2008 U.S. Dist. LEXIS 104153 (N.D. Ohio Dec. 24, 2008) (plaintiffs had actual knowledge running from the date that participants had access to plan documents disclosing the alleged breach of fiduciary duty); *Frommert v. Conkright*, 433 F.3d 254, 272 (2d Cir. 2006) (noting that actual knowledge runs from date of disclosure to plaintiffs).

In other words, a plaintiff may not avoid commencement of the statute of limitations merely by refusing to read or examine information disclosing relevant facts

-6-

that would trigger the statute of limitations. *See, e.g., Reeves v. Airlite Plastics, Co.*, No. 8:05cv56, 2005 U.S. Dist LEXIS 23628, at \*4-6 (D. Neb. Sept. 26, 2005) (an ERISA participant cannot "disavow actual knowledge of an alleged fiduciary breach by deliberately ignoring information that is clearly presented."); *Edes v. Verizon Commc'ns, Inc.,* 417 F.3d 133, 142 (1st Cir. 2005) ("We do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff."). Therefore, because Plaintiffs' actual knowledge runs from the date that documents were provided, or made available, to Plan Participants disclosing the facts underlying the alleged breach of fiduciary duty, Plaintiffs cannot avoid the bar of ERISA's three year statute of limitations by merely claiming that they did not read the documents that form the basis for their claims. *See, e.g., Young*, 550 F. Supp. 2d at 418-419;[3] *Reeves*, 2005 U.S. Dist. LEXIS

---

[3] In *Young*, plaintiffs claimed that defendants breached their fiduciary duties by allowing the plans to invest imprudently in mutual funds that charged excessive fees, and by investing in funds that held single equities as opposed to funds that held multiple equities. 550 F. Supp. 2d at 418. Defendants argued that both claims were time-barred because prospectuses that were distributed to plan participants more than three years before plaintiffs filed the action plainly disclosed the fees associated with the funds, and likewise disclosed that the single equity funds were undiversified investments primarily holding the stock of a single company. *Id.* Plaintiffs argued, however, that the statute of limitations was not commenced by such disclosures because they had never seen or read the prospectuses. *Id.* at 419. The court rejected this argument, holding instead that the disclosures in the prospectuses were sufficient to commence the statute of limitations, regardless of whether plaintiffs had actually read or even seen the prospectuses. *Id.* The court clearly stated that whether individual plaintiffs actually see or read the documents is simply a non-issue because "any interpretation of the term 'actual knowledge' that would allow a participant to disregard information clearly provided to him/her would effectively provide an end run around ERISA's limitations requirement." *Id.*

23628 at *5.[4]

To trigger the ERISA statute of limitations, the plaintiff need only have knowledge of the act and cannot wait until the consequences of the act become painful. *Tiernes v. Tern-Fam, Inc.*, 904 F.2d 708 (6th Cir. 1990) (citing *Turner v. Ret. Plan of Marathon Oil Co.*, 659 F. Supp. 534 (N.D. Ohio), *aff'd*, 845 F.2d 327 (6th Cir. 1988)). *See also Zirnhelt v. Michigan Cons. Gas Co.*, 526 F.2d 282, 288 (6th Cir. 2008) ("In determining when the limitations clock starts under the actual knowledge prong, we look to the 'plaintiff's actual knowledge of the underlying conduct giving rise to the alleged violation that is required, rather than the knowledge that the underlying conduct violates ERISA.'") (citing *Wright*, 359 F.3d at 331)); *Lear Siegler Div. Holdings Corp. v. Safelite Group, Inc.*, No. 1:05cv687, 2009 U.S. Dist. LEXIS 60578, at *11-12 (S.D. Ohio July 13, 2009) ("Since more than three years have passed after the earliest date on which Plaintiff had actual knowledge of Defendants' alleged breach of fiduciary duty, the applicable statute of limitations had run.") (citing *Wright*, 359 F.3d at 331, and *Bishop,* 520 F.2d at 521).

---

[4] In *Reeves*, plaintiff brought a claim against defendants for breach of fiduciary duty under ERISA for investing his account in a common stock fund rather than a money market fund pursuant to plan rules. 2005 U.S. Dist. LEXIS 23628, at *1. Defendants argued that plaintiff's claim was time-barred under ERISA § 413(2) because the fact that plaintiff's account was invested in the common stock fund was clearly disclosed in numerous quarterly statements sent to plaintiff more than three years prior to plaintiff filing the action. *Id.* Plaintiff testified in his deposition that he likely received the quarterly statements, but he simply discarded them without even opening or looking at them. *Id.* at *2. The court held that plaintiff could not circumvent the statute of limitations, specifically stating that "any interpretation of the term 'actual knowledge' that would allow a participant to refuse to accept and acknowledge information clearly set before him is untenable." *Id.*

The Sixth Circuit's repeated position in *Wright, Tiernes, Turner*, and additional cases is consistent with the majority of the circuit courts which have also addressed the issue. For example: "ERISA's statute of limitations for suits against fiduciaries does not begin to run at the time of injury, but instead . . . at the time that the prospective plaintiff acquires actual knowledge of the breach of fiduciary obligation, which may precede the injury." *Wolin v. Smith Barney Inc.*, 83 F.3d 847 (7th Cir. 1996) (emphasis supplied).

> The key to the ERISA statute of limitations when applied to these types of violations is not "actual harm," but rather "actual knowledge" of the ERISA breach or violation. 29 U.S.C. §1113 . . . [J]ust because [Plaintiff] could not accurately quantify its injury until March of 1985 does not mean that [Plaintiff] lacked actual knowledge of the alleged breach until then . . . [Plaintiff's] cause of action accrued at least as of July of 1984 when [Defendant] specifically informed [Plaintiff] of the affect of the market value option on [Plaintiff's] account and [Plaintiff] thereby gained actual knowledge of the breach.

*Ziegler v. Connecticut Gen. Life. Ins. Co.*, 916 F.2d 548 (9th Cir. 1990).

In early 2009, the Fourth Circuit Court of Appeals recognized the split of authority among the circuits and confirmed that the Sixth Circuit is in the majority view:

> The Third and Fifth Circuits' narrow interpretation of actual knowledge in section 413 "requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." *Int'l Union v. Murata Erie N. Am., Inc.*, 980 F.2d 889, 900 (3d Cir. 1992) . . . Other circuits, including the Sixth, Seventh, Ninth, and Eleventh Circuits, require only that the plaintiff have "knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the

-9-

running of the statute." *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003); *see also Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992); *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985); *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987). The remaining circuits that have settled on a definition that falls somewhere between these two views. *See, e.g., Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001) (holding that a "plaintiff has 'actual knowledge of the breach or violation' within the meaning of ERISA § 413(2), 29 U.S.C. § 1113(2), when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act").

*Browning v. Tiger's Eye Benefits Consulting*, 313 Fed. Appx. 656, 660-61 (4th Cir. 2009).

Conversely, Plaintiffs claim that the statute of limitations period cannot begin to run until a fiduciary breach actually occurs and the plaintiff has been injured. *Wike v. Verture, Inc.*, 566 F.3d 590, 593 (6th Cir. 2009).[5] Specifically, Plaintiffs assert that the fiduciary breach occurred on March 22, 2004, the date that Fifth Third actually moved the money in the Plan from the low cost to the high cost investments, which date would be within the three year statute of limitations. However, *Wilke* is easily distinguishable from the cases cited by Defendants. Most glaringly, *Wilke* filed his claim under the Electronic Funds Transfer Act ("EFTA"), and the statute of limitations argument pertained specifically to the EFTA, not ERISA. Moreover, *Wilke* did not distinguish or overrule *Wright* or its progeny in this Circuit. Accordingly, the Court finds that Defendants properly argue that the statute of limitations period started to run before Plaintiffs were "injured" on March 22, 2004.

---

[5] Notably, *Wilke* is the *only* case that Plaintiffs cite to support their argument. Plaintiffs do not cite a single case to support their "breach and injury" theory in the context of 29 U.S.C. § 1113, nor could this Court find any Sixth Circuit caselaw that actually adopted such a view.

Additionally, Plaintiffs claim that they did not receive actual notice that Fifth Third had moved the Plan's money from the low cost investments to the high cost investments until they received their next quarterly Plan statement in April 2004 showing that the funds had been moved on March 22, 2004. The record evidence clearly establishes otherwise.

The record contains undisputable evidence that Plaintiffs first acquired "actual knowledge" of "the facts or transaction that constituted the alleged violation" at some point in time more than three years prior to the filing of the second amended complaint – that is, before March 21, 2004. In fact, Plaintiffs themselves affirmatively state in their own second amended complaint that Plaintiffs acquired actual knowledge of the facts or transactions that comprised the alleged breach of fiduciary duty prior to March 21, 2004.

As the Plaintiffs allege in their second amended complaint, "under ERISA, fiduciaries – not participants – exercise control over the selection of investment options made available to participants. Thus, whether or not participants are provided with the ability to select among different investment options, and whether or not participants exercised control over their investment decision (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to participants, as a result of such action the Plan suffers a loss." (Doc. 169 at ¶ 111 (emphasis added)).[6] Indeed, as the Plaintiffs further allege in their

---

[6] *See, e.g.*, Fifth Third's presentment to Plan Participants of the complained-of options in the December 2003 and January 2004 HR Newsletters and the March 5, 2004 brochure.

own words in their second amended complaint, "<u>Defendants violated</u> Section 406(b) of <u>ERISA</u> by engaging in undisclosed self-dealing <u>by offering</u> Fifth Third mutual funds in the Plan in order to generate seed money that facilitates the marketing of Fifth Third's marketing of their proprietary funds, <u>and by offering Fifth Third mutual funds in the Plan that charge excessive and unreasonable fees.</u>" (Doc. 169 at ¶ 180 (emphasis added)).

Plaintiffs' own allegations in their second amended complaint, formulated before they were as focused on the statute of limitations as they are now, wholly undercut their late-breaking position on the statute of limitations.

Moreover, in compliance with SEC laws and regulations, every year Fifth Third publicly files prospectuses, semi-annual reports, and annual reports for the Fifth Third Funds, and Plaintiffs admit that these publicly available documents, including those filed in 2003 and 2004, form the entire basis for each of their Excessive Fee Claims. (*See* Doc. 376, Ex. 3, Shirk Amended Discovery Responses, Interrogatory Nos. 9, 10, 12 and 14; *see also* Ex. 4, Jauss' Amended Discovery Responses, Interrogatory Nos. 9, 10, 12 and 14).

Importantly, and as expressly conceded by Plaintiffs, the fees and investment-related expenses for each of the six Fifth Third Funds were disclosed in these publicly filed prospectuses, semi-annual reports, and annual reports, as early as November 2003.[7]

---

[7] Q: Do you agree with me that when you did have investments within the Fifth Third plan, that the advisory fees charged on those investments were disclosed in the prospectuses?

A: That is my general understanding.

Q: Okay. And those prospectuses were available on the Fifth-Third website?

A: I think so.

Q: And they were available in the '03, late '03, early '04 time frame?

A. That's my understanding. (Shirk Dep. at 34).

The prospectuses plainly delineated the fees and expenses for each of the Fifth Third Funds in a section entitled "Shareholder Fees and Fund Expenses." This section included fee tables which listed the total fees and expenses for each fund and delineated the total annual fund operating expenses and net expenses. (*See* Doc. 376, Exs. 11, 12). Moreover, the semi-annual and annual reports for the Fifth Third Funds further itemized the fees and investment-related expenses – including the Advisory Fees – in a section entitled "Statement of Operations." (*See, e.g.,* Doc. 376, Ex. 13).

Plaintiffs further admit that these publicly filed documents were provided or made available to Plan Participants.[8] In fact, both Plaintiffs have testified that the prospectuses – which clearly disclosed the Advisory Fees – were available to them by early 2004.

In addition, Plaintiffs received numerous Plan communications about the 401(k) fund offerings, specifically and conspicuously directing them to easily accessible information about fees and expenses for the Fifth Third Funds. For example, in 2003 and 2004, the Plan provided Plaintiffs with four newsletters clearly informing them that fee and expense information for each fund was contained in the prospectus. (Doc. 376, Ex. 7). Furthermore, the Plan e-mailed a brochure to all Plan Participants on March 5, 2004, detailing the new fund options of January 2004 that are at the center of Plaintiffs' allegations. (*Id.*, Ex. 8). The second sentence of that brochure plainly informed Plaintiffs

---

[8] Q: Do you recall what you received back in that January '04 time frame?
  A: I believe that we had a website where they had plan perspectives [sic], not just for life model, but for everything. And participants could go on – they had like two-or three–page summary that you could do. And then they also had like a more in-depth prospectus.   (Shirk Dep. at 22).

that they could find fee and expense information for each new fund in the prospectus available online or by phone, and specifically provided the appropriate website and phone number. (*Id.*) In each of these communications, Plaintiffs were also explicitly warned that investors should read the prospectus carefully before investing. (*Id.*, Ex. 7).

Therefore, the record evidences that Plaintiffs had actual knowledge of the conduct giving rise to the alleged ERISA violations [all fee and expense information for the funds] as far back as 2003 and no later than March 5, 2004.[9] Therefore, in order to comply with ERISA's three year statute of limitations, Plaintiffs would have had to file their complaint by at least March 5, 2007. And they did not "file" until March 21, 2007.[10]

## V.    CONCLUSION

Upon careful review, the Court finds that there are no genuine issues of material fact in dispute and Defendants are entitled to entry of judgment as a matter of law. Accordingly, the Fifth Third Defendants' motion for summary judgment on counts VII-IX of the second amended complaint (Doc. 376) is **GRANTED**. Furthermore, for the same reasons set forth in this Memorandum Opinion and Order, summary judgment on counts VII-IX of the second amended complaint is **GRANTED** in favor of all Defendants, including the Fifth Third Outside Directors Defendants. Moreover, Plaintiffs' motion to

---

[9] Because the fee and expense information was given to Plaintiffs before the controlling date of March 21, 2004, it is not necessary for the Court to determine precisely when Plaintiffs had actual knowledge. Regardless of whether the HR Direct Newsletters that were sent in December 2003 and January 2004 were sufficient to establish actual knowledge, the March 5, 2004 brochure was undisputably sufficient.

[10] *See* footnote 2, *supra*.

-14-

certify the class (Doc. 368) and motion to compel (Doc. 370) are therefore also **DENIED,** as **MOOT**. And as there are no other matters remaining for this Court's review, it is further ordered that **THIS CASE IS CLOSED**.

 **IT IS SO ORDERED**.

DATE: _9/30/09_        s/ *Timothy S. Back*
              Timothy S. Black
              United States Magistrate Judge